**SOUTHERN STATES LIFE INSURANCE COMPANY, Appellant,**

v.

**E. R. NEWLON, Appellee.**

No. 4038.

Court of Civil Appeals of Texas.

Eastland.

Jan. 14, 1966.

Rehearing Denied Feb. 4, 1966.

Bracewell, Reynolds & Patterson, Joe H. Reynolds and Stanley B. Binion, Houston, for appellant.

Davis & David, John L. David, Dalhart, for appellee.

GRISSOM, Chief Justice.

E. R. Newlon sued Southern States Life Insurance Company for the purpose of having four new life insurance policies cancelled and some old policies reinstated. In a jury trial, judgment was rendered for the plaintiff and the defendant has appealed.

Newlon alleged that on November 10, 1962, the defendant insurance company issued to him four new insurance policies covering the lives of his children; that before November, 1962, he owned three paid up life insurance policies issued by defendant; that he was approached by Sinclair, a general agent for said company, who solicited new insurance and stated that the company was giving its paid up life policy holders paid up insurance policies to release funds held in reserve; that this would benefit both the company and such policy holders; that Newlon informed Sinclair he did not want to buy any new insurance but that he wanted to change the beneficiaries in his three old paid up life insurance policies; that Sinclair presented to Newlon forms for his signature which he said would procure the desired change in beneficiaries. Sinclair represented that it would be necessary for Newlon to deliver his old paid up life insurance policies to him so that he could send them to the company and have the change of beneficiary noted thereon; that, about the 10th of November, 1962, two of defendant's agents returned to Newlon's home and returned to him his three old paid up policies together with four new policies insuring the lives of his children; that Whitaker and another agent, who delivered said policies to Newlon represented that they were agents of defendant and again informed Newlon that the four new policies were paid up life insurance policies and that no premiums would ever be required thereon, whereupon, Newlon accepted them and gave the agent a receipt therefor. Newlon alleged he was repeatedly assured that nothing was being done to his old paid up life insurance policies; that they would remain unchanged except as to the change in beneficiary; that Newlon would not have accepted the policies but for the representations of Sinclair and Whitaker, the duly authorized agents and representatives of Southern States; that said representations were made for the purpose of misleading him and inducing him to purchase new policies and surrender his paid up life insurance policies so that a lien for premiums on the new policies could be noted thereon. Newlon alleged that he did not learn of the falseness of said statements until about two months after the policies were delivered to him when another agent informed him that he had obtained a loan against his old paid up life insurance policies and that additional premiums would be charged on the new policies; that about three months after the policies were delivered he informed the company that he did not want any loans against his old policies and that he wanted the new policies cancelled as of the date they were issued and the loan value reinstated on his old paid up policies, but Southern States refused to cancel the new policies and refused to reinstate the loan values on the old paid up life insurance policies. Wherefore, he sued to have the new policies cancelled for fraud and the loan value of his old paid up life insurance policies reinstated.

Southern States Life Insurance Company answered by a general denial. It alleged that in October, 1962, Newlon executed four applications for life insurance on his four children; that he executed said four applications each of which contained provision that it and the policy issued in reliance thereon should constitute the entire contract, and that the company would not be affected by any statement of its agents not contained in said application; that Newlon and wife signed separate instruments designated as assign-

ments of policies to said company to secure loans for payment of some premiums on the new policies and signed instruments directing said company to apply the proceeds of the policy loans on Newlon's old paid up life insurance policies to payment of the first one and one-half annual premiums on the four new policies insuring his children; that said policies were delivered to Newlon about November 10, 1962, when he signed a receipt therefor stating that each policy was issued as applied for; that the insurance company relied on such instrument signed by Newlon, changed its position and undertook the risk and expense of insuring Newlon's children; that Newlon knowingly signed the four applications for new insurance each of which was entitled assignment of policy to Southern States to secure policy loans and the two instruments signed by plaintiff instructed the defendant to apply the proceeds of the loans on the old paid up policies to payment of the first one and one-half annual premiums on the new policies; that the insurance company relied on these requests and changed its position and incurred risk and expense in issuing the new policies and, therefore, that Newlon was estopped to have the new policies cancelled and the loan value of the old policies reinstated.

Defendant specially pleaded that by signing or accepting said instruments Newlon bound himself by their terms, since a person claiming fraud "must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated." The insurance company concluded that Newlon was estopped to complain of matters which he could have discovered at the time of delivery of the policies by reading them.

The insurance company admitted (1) that Newlon bought from it four life insurance policies about November 10, 1962; (2) that the policies purchased were those some-times designated herein as the new policies; (3) that before November 10, 1962, Newlon owned three old paid up policies issued by said company; (4 and 5) that Sinclair and Whitaker were agents and representatives of said company on November 10, 1962; (6 and 7) that both Sinclair and Whitaker had authority to sell life insurance policies for appellant at the date of the sale of the new policies to Newlon and (8) that Sinclair received a commission for the sale of said new policies. The insurance company denied that either Sinclair or Whitaker had authority to sell said new policies. It denied that at the time said new policies were sold to Newlon that either Sinclair or Whitaker was under contract to represent it as its agent for the sale of life insurance.

A jury found (1) that Sinclair stated to Newlon that appellant was offering him, as a paid up policy holder, life insurance policies at no cost to him; (2) that Sinclair made the statement as one of fact; (3) that it was false when made; (4) that it was material; (5) that the statement was made with the intention of influencing Newlon to apply for new policies; (6) that at the time Newlon delivered his paid up life insurance policies to Sinclair he relied on said statements; (7) that Newlon was damaged; (8) that such statements were willfully made, that is, purposefully made, knowing the same to be untrue. The jury also found that Whitaker stated to Newlon that appellant was offering Newlon, as a paid up policy holder, life insurance policies at no cost to him; (10) that Whitaker made the statements as a statement of fact; (11) that the statements were false when made; (12) that Whitaker's statement was material; (15) that Newlon was damaged by Whitaker's statements; (16) that Whitaker's statement was willfully made, that is, purposefully made, knowing the same to be untrue; (17) that appellant received a benefit from the representation by Sinclair to Newlon that appellant was offering him, as a paid up policy holder, new life insurance policies

without cost; (18) that appellant received benefit from Whitaker's representations that appellant was offering to Newlon, as a paid up policy holder, new life insurance policies at no cost to him; (20) that Newlon did not fail to exercise the care of an ordinary person in not reading the four new policies before February 21, 1963; (22) that Newlon did not fail to exercise ordinary care in failing to read the endorsement on the old policies before March, 1965, to the effect that the old policies were subject to a loan, and (25) that Newlon did not fail to exercise ordinary care in not reading the application for the new policies when he signed them.

But, the jury did find that (13) the statement by Whitaker to Newlon that appellant was offering him, as a paid up policy holder, new life insurance at no cost to him, were not made with the intention of influencing Newlon to apply for additional insurance; (19) that Newlon did not exercise ordinary care in failing to read the four new policies when they were delivered; (21) that Newlon by the exercise of reasonable diligence could have discovered that the new policies required payment of premiums; (23) that Newlon by the exercise of reasonable diligence could have discovered that loans were being made against the old policies and (24) that Newlon by the exercise of reasonable diligence could have discovered that premiums on the new policies were being paid by loans on the old.

Newlon filed a motion for judgment on the verdict and asked the court to disregard issues 19, 20, 21, 22, 23 and 24 and the answers thereto because they failed to submit an ultimate issue upon which a judgment could be based; that they referred to a time subsequent to the act of fraud depended upon by plaintiff was practiced on him.

Plaintiff alleged that the jury's answer to issue 25, which was in substance that Newlon failed to exercise ordinary care in not reading the applications for the new policies when he signed them, was the only defensive issue submitted and that it was answered in plaintiff's favor; that Newlon did not fail to exercise ordinary care in not reading the applications when he signed them; that the issues set out above had no relation to the fraudulent acts complained of by Newlon and the injuries sustained by him as shown by issues 1 through 8 and the answers thereto. In other words, that the fraud which induced Newlon to so act took place before the time inquired about in issues 19 through 24 and, therefore, the answers to issues 19 through 24 were not material. Newlon alleged that the answers to issues 19 and 20 were conflicting and should be disregarded; that the answers to issues 22 and 23 were conflicting and should be disregarded and that the answers to issues 23 and 24 were in conflict and should be disregarded. The court sustained plaintiff's said motion and rendered judgment cancelling said four new policies and reinstating Newlon's old paid up policies as they were prior to November 10, 1962.

Appellant's points 1 and 2 are that the court erred in overruling appellant's motion for judgment on the verdict and in disregarding the answers to issues 19, 20, 21, 22, 23 and 24 because the answers thereto established that plaintiff was negligent and therefore he was barred from rescission; that the answers to issues 19, 20, 21, 22, 23 and 24 established that Newlon was guilty of negligence which precluded rescission. Appellant's third point is that the court erred in overruling appellant's motion for an instructed verdict because a person is bound by what he signs in the absence of fraud which prevents him from discovering the nature of the instrument he signs. Appellant's fourth point is that the court erred in overruling its motion for an instructed verdict because, as a matter of law, Newlon was charged with knowledge of Article 21.04 of the Texas Insurance Code, V.A.T.S., which limits the authority of a soliciting agent. Appellant presents other points to the effect that

Newlon, as a matter of law, was bound by the terms of the contracts delivered to him; that the court erred in overruling appellant's motion for an instructed verdict because both Newlon and his wife testified that they did not examine the policies until months after they were delivered and because, as a matter of law, Newlon was not entitled to rely upon said representations but was under a legal duty to act as a reasonable man in the protection of his own interest. He presents other points to the effect that the court erred in refusing to permit the introduction of certain evidence. Except for the procedural questions, appellant's contention is to the effect that Newlon was estopped to rescind because he was negligent in failing to sooner ascertain the falsity of appellant's representations.

◼◼ We agree with appellee that the contributory negligence of Newlon is not a defense to this action based on fraud and that a fraud-feasor cannot excuse his fraudulent acts by asserting that the defrauded person was unduly credulous and guilty of contributory negligence in believing the fraudulent statements made to him. We think the applicable law is stated in 37 C.J.S. Fraud § 30, page 274 as follows:

"While it has been stated that there is a duty on the part of the representee to use some measure of protection and precaution to safeguard his interest, and that in dealing at arm's length with the other party he must avail himself of the means of knowledge readily within his reach, see infra § 34, the rule has been enunciated that contributory negligence of the representee is no defense to an action based on fraud. Since the very purpose of fraud is to cheat its victim by making him negligent the precautions essential to prevent injury, and to deny relief because the victim was negligent would encourage dishonesty, and it is held that the fraud-feasor will not be heard

to say that he is a person unworthy of belief and that plaintiff was negligent in trusting him and was cheated through his own credulity."

In Blaine v. Lowery, Tex.Civ.App., 157 S.W.2d 713, it was held that misrepresentation of stock is actionable fraud where the deceived party acted in ignorance of the true facts, and that lack of diligence did not constitute a waiver of the fraud which induced him to so act. In that case it was held that a defendant would not be heard to assert that the innocent victim of his cunning took his chances without proper investigation. That, when it was established that there had been fraudulent misrepresentation by which a person has been induced to enter into a contract, it is no answer to his claim for relief to say that he might have known the truth by the exercise of proper diligence. In Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808 our Supreme Court long ago held that it was not the law in Texas that a person injured by the fraudulent representations of another was required to exercise diligence to discover the falsity of such statements and that, in the absence of knowledge, he had a right to rely and act upon such statements and that such a wrongdoer could not be heard to say that he should have disbelieved the defendant's fraudulent statements. We think the jury's findings that Newlon failed to exercise reasonable diligence to timely discover the fraud does not constitute a defense to the findings of fraud perpetrated by the agents of appellants which induced appellee to receive the four new policies and the instruments showing a loan on his old paid up policies.

We conclude that error is not shown in the procedural questions presented and that the court properly rendered judgment for Newlon putting him in the same position he occupied at the time the fraudulent acts were committed by the appellant.

The judgment is affirmed.