**John Leeman ISAACS and Susan Gail Isaacs, Appellants,**

v.

**Charles BISHOP and Hallsville Dragway, Inc., Appellees.**

No. 06–05–00092–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 18, 2007.

Decided Jan. 10, 2008.

Rehearing Overruled March 14, 2008.

Carl David Adams, The Law Office of Carl David Adams, Dallas, TX, for appellants.

Marc S. Culp, Angela J. Hindman, Culp & Dyer, LLP, Denton, TX, for appellees.

Before MORRISS, C.J., CARTER and CORNELIUS,* JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Using their wildest imagination, John and Susan Isaacs and Charles Bishop could not have predicted the unfortunate events which began when Isaacs contracted to sell the Hallsville Dragway to Bishop. That purchase contract was followed a few months later by a physical conflict which included Isaacs[1] and Bishop, a subsequent punitive campaign by Isaacs against Bishop, and ultimately a pecuniary collapse by Bishop. From the resulting lawsuit, no party walked away happy.

The initial events are clear. Bishop purchased real and personal property known as the Hallsville Dragway (the track) from Isaacs, with Isaacs providing purchase-money financing. Isaacs' attorney, R.G. Schleier, after negotiations between the parties, prepared the documents for the

---

* William J. Cornelius, Retired Chief Justice, Sitting by Assignment

1. In this case, the parties do not differentiate between John and Susan Isaacs, referring usually to just the singular "Isaacs." Because no issue on appeal is affected by this fact, we follow that convention, treating Isaacs as one person, unless the context clearly suggests otherwise.

sale, including the promissory note that later became one focal point of the later dispute.

Six months after the sale, the Isaacs family—including father, mother, son, and daughter on this occasion—visited the track and were involved in a brawl with a handicapped track worker and his wife. The evidence shows that Bishop got involved in the melee in attempting to break it up. Bishop called the police, who arrested John Isaacs. When released from jail the next morning, John Isaacs reportedly called Bishop and attempted to get Bishop to change his version of events to shift blame away from John Isaacs.[2] That attempt was, reportedly, accompanied by threats of physical violence and fiscal destruction to Bishop; the jury found threats did indeed occur. There was also evidence that Isaacs paid two fight witnesses to testify "appropriately" and that, when one began to waver, Isaacs threatened that witness with physical violence.

When Isaacs began looking for a way to foreclose, he found violations of what turned out to be—to Bishop's surprise—a hair-trigger default provision in the promissory note. There is evidence that Schleier changed the promissory note at Isaacs' direction to insert that provision, a provision the jury later found to have been fraudulently added. Isaacs began foreclosure proceedings. Evidence suggested that the track had been making a profit for Bishop until Isaacs began his campaign to cause Bishop's fiscal ruin and that bankruptcy ultimately resulted from that campaign.

Lawsuits were filed and ultimately were combined into a single action. Bishop sued Isaacs in tort for threatening and actively seeking his harm, wrongful foreclosure efforts, fraud in the sale of the track, and intentional infliction of emotional distress en route. Bishop sued Schleier, alleging that Schleier had told Bishop he need not get his own counsel and that Schleier had changed the documents after they'd been agreed to, but before they were signed. Isaacs sued Bishop to accelerate the maturity of the note and foreclose on the track, seeking a judgment on the note balance. In response, Bishop sought to rescind the track purchase.

During the course of the litigation, because Bishop could not get alternative financing, Bishop created the corporation Hallsville Dragway, Inc. (hereinafter HDI), and transferred the track into it. HDI later filed for bankruptcy protection, and the bankruptcy court ordered the original note to be replaced with a "Replacement Note" containing less severe terms. Later, Bishop individually filed for bankruptcy protection as well.

The jury made various findings of fact: an attorney-client relationship existed between Schleier and Bishop; damages were attributable thirty percent to Bishop and seventy percent to Schleier; Isaacs committed fraud in the purchase and was seventy percent responsible, while Bishop was thirty percent responsible; damages from the fraud amounted to $171,000.00; Isaacs intentionally inflicted emotional distress on Bishop, entitling Bishop to $50,000.00; special damages, if the track were returned to Isaacs, would amount to $400,000.00 to Bishop; Bishop was due $171,000.00 for attorneys' fees for HDI's bankruptcy and for expenses in defending against Isaacs' attempt to accelerate the note and foreclose on the track; attorneys' fees recoverable by Bishop for prosecuting the fraud claim amounted to $200,000.00 for trial, $50,000.00 for appeal to this Court, and $35,000.00 for appeal to the

2. There are indications that John Isaacs had previously been convicted of assault.

Texas Supreme Court; court costs totaled $285,000.00.[3]

Bishop filed a motion seeking judgment on the verdict. He filed an election to rescind the purchase, with collateral damages as found by the jury and alternatively to recover for fraud. Isaacs filed a motion for judgment notwithstanding the jury's verdict.

The trial court's judgment did not match any request made by any party. The court awarded damages to Bishop based on fraud and intentional infliction of emotional distress. Based on the findings of damages, negligence, proportionate responsibility, and attorneys' fees, the judgment awarded Bishop actual damages of $169,700.00 plus attorneys' fees and "certain costs" of $250,000.00, without allocation to any specific cause of action. Bishop's total award was for $419,700.00, plus prejudgment interest in the amount of $22,130.74.

But the trial court also held that Isaacs remained entitled to recover under the Replacement Note, which had a total balance of $695,772.10, plus contractual attorneys' fees for collection in the amount of $2,500.00, for a total of $698,272.10. The trial court ordered a complete offset of the contractual amount due Isaacs against Bishop's tort recovery—subtracting the total award to Bishop from the total principal amount due Isaacs under the note, leaving a balance owed to Isaacs of $256,441.36. The court then ordered Bishop to pay the balance of the Replacement Note to Isaacs in monthly installments of $6,746.85, the monthly amount due under the terms of the original note. The trial court also ordered that no occurrence before the date of trial could justify any further acceleration or foreclosure effort. The trial court also denied the Isaacses' request to reduce Bishop's damages in fraud either by the percentage of responsibility assessed to Schleier, or by a dollar-for-dollar credit for settlement amounts paid by Schleier to Bishop post-verdict.

Both parties appeal.

Isaacs sets up a number of issues for review on appeal. He complains that the trial court erred by overruling the motion for judgment N.O.V.[4] and by providing

---

3. Jury awards against Schleier are no longer at issue, since he settled before judgment.

4. The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is to determine whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). If so, then the trial court erred in denying the motion for judgment notwithstanding the verdict. *Id.* On review, this Court considers the evidence and inferences tending to support the trial court's decision, and disregards evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex.2002); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 322 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise. Accordingly, the test for legal sufficiency is the same for directed verdicts and judgments notwithstanding the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). We view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807; *Zinda v. McCann St., Inc.*, 178 S.W.3d 883 (Tex.App.-Texarkana 2005, pet. denied). This Court is not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Findings of fact are the exclusive province of the jury and/or trial court. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex.1986). Accordingly, if there is sufficient competent evidence of probative force to support the finding, it must be

offsets and credits, that the court erred by refusing to allow acceleration of the balance due on the note, that the court erred by overruling the motion for judgment N.O.V. as to fraud because there was no evidence of fraud and no duty of disclosure, that the jury's finding that Bishop was negligent created a conflict between that answer and a finding of fraud by Isaacs, that the "duty to disclose" jury instruction is fatally incorrect, and that the court erred by overruling the motion for judgment N.O.V. and by awarding attorneys' fees because the alleged fraud was outside the scope of the fraud statute pled.

Bishop also raises issues. Bishop contends first that the trial court abused its discretion by denying his election to rescind the purchase, that the court abused its discretion by granting Isaacs a trial amendment post-verdict adding ratification as a defense, that (if we find against Bishop on the rescission issue) the trial court erred by reducing fraud damages based on Bishop's negligence, that it erred by offsetting his actual damages against the note, that the offset was error in how it was against future monthly installment payments, and that the court erred by failing to award all litigation costs as found by the jury and in failing to award any appellate attorneys' fees. Bishop also contends that, if we reverse for a new trial,[5] we should also find that the trial court erred in granting a summary judgment dismissing

Bishop's claim for lost profits and for damages for obstruction of justice.

We modify the judgment of the trial court in two respects—countermanding the ordered offset and adjusting the amounts of the awarded attorneys' fees and costs—and affirm the judgment as modified. We do so because we hold that (1) the trial court properly refused to submit an all-inclusive proportional responsibility issue across multiple causes of action, (2) denying rescission to Bishop was within the trial court's equitable discretion, (3) ordering Bishop's damages offset against Isaacs' note was error, (4) Bishop's recovery for intentional infliction of emotional distress was proper, (5) Bishop's recoveries based on fraud were proper, and (6) Bishop's recovery of attorneys' fees and costs must be modified.

*(1) The Trial Court Properly Refused to Submit an All–Inclusive Proportional Responsibility Issue Across Multiple Causes of Action*

■ Isaacs complains because attorney Schleier was not part of the percentage of responsibility determination made by the jury. Isaacs asserts that the charge should have directed the jury to determine the percentage of responsibility for all parties (including Schleier) in a single, global finding. He argues that all possible recoveries, on whatever basis, must be combined for a gross determination by the jury.

---

sustained. *Beall v. Ditmore*, 867 S.W.2d 791, 795–96 (Tex.App.-El Paso 1993, writ denied). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Id.* at 796.

The complicating factor is that, in this instance, the trial court did not render a judgment matching the verdict. As already noted, the judgment does not match either the Isaacses' or Bishop's preferred judgment. Thus, we have what the jury found, what Isaacs wanted, and what Bishop wanted—and

then we have what the trial court rendered— which corresponds with none of them.

5. Counsel for Isaacs has categorically pointed out in his reply brief that they have not requested a new trial. Thus, Isaacs' evidentiary issues are, by definition, restricted to arguments that could result in rendition of judgment, not a remand. Thus, Isaacs' issues seeking a new trial are moot, but, Isaacs urges, the arguments remain useful in reviewing other issues in this appeal.

To support that argument, Isaacs relies on the language of the statute, TEX. CIV. PRAC. & REM.CODE ANN. § 33.003–33.017 (Vernon 1997 & Vernon Supp.2007). Citing no case authority, he correctly posits that the Code attempts to proportion responsibility for tortious acts, so that each individual plaintiff receives the amount due, and each individual defendant pays the amount for which he or she is responsible. Beyond that, however, the language of the statute is the key.

The jury determined the percentages of responsibility for Bishop and Isaacs for fraud. Separate questions asked about other damages caused by Schleier and assessing a percentage of responsibility between Schleier and Bishop on those.

If this issue was preserved,[6] the question is whether the statute requires a sin-

> You should only assign percentages to the persons you find caused the damages. The percentages you find must total 100%. The percentages must be expressed in whole numbers. The responsibility attributable to any one named below is not necessarily measured by the number of acts or omissions found.

QUESTION _____

> For each person found by you to have caused the damages to Charles Bishop, find the percentage caused by:
>
> | | | |
> |---|---|---|
> | a. Charles Bishop | ___ | % |
> | b. Johnny Isaacs | ___ | % |
> | c. Robert G. Schleier, Jr. | ___ | % |
> | TOTAL | 100% | |

It is possible that this proposed question was designed to seek to allocate responsibility for all damages caused by all causes of action. That, however, is by no means clear in the record. If that was its purpose, it was not capable of doing so as written—there are simply not enough spaces left in the form to accommodate all the questions raising damage issues. There is also no specific objection to the piecemeal submission shown by this record. The objection by Schleier's counsel could just as readily refer to allocation of damages in a single particular cause as to damages overall. Combining the various discussions, however, one can see the possibility that the apportionment issue was placed before the trial court for decision. *Compare Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 228 (Tex.2005).

Rule 274 of the Texas Rules of Civil Procedure provides: "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *See* TEX.R. CIV. P. 274. There is only one test for "deter-

---

6. We will assume the issue was preserved, though preservation is not certain. It is apparent that, as described by one of the counsel, there was a "sea of paper" involved in preparing this charge. The record of the charge conference is fairly lengthy and tedious, and it is unclear at a number of points exactly what is being discussed. This is made even more convoluted by the fact that at least one earlier charge conference had occurred and that counsel and court were not looking at the same versions of the proposed charge while discussing it. This record does not reflect that Isaacs complained about this aspect of the jury charge.

In his brief, Isaacs points us to the discussion surrounding an objection raised by his codefendant, Schleier, contending that this preserves his complaint for our review. At that point, counsel Young stated that he had prepared a jury question on proportionate responsibility between Bishop and Isaacs and had included Schleier "because I assumed that there would only be one proportionate responsibility claim for the whole case." Counsel Young went on to state that, if the court was submitting

> some claims against Bishop versus Schleier and some claims Bishop versus Isaacs, that Mr. Isaacs is entitled to a proportionate responsibility question as well, so all we would have to do is just strike Mr. Schleier's name from that since it's only being submitted against Mr. Bishop and Mr. Isaacs.

The clerk's record contains a document filed March 1, 2005, labeled proposed jury instructions, which contains a question that reads as follows:

> If you have answered Questions ____ and ____ "Yes" as to more than one of the persons named below, then answer the following question. Otherwise, do not answer the following question.

gle jury question to be used to allocate percentage responsibility for all damages alleged in the lawsuit, regardless of whether multiple causes of action or theories of liability are involved.

Isaacs correctly points out that broad-form submission is the preferred method of presentation to the jury. Rule 277 of the Texas Rules of Civil Procedure explicitly provides that the court "shall, whenever feasible, submit the cause upon broad-form submission." *See* TEX.R. CIV. P. 277. But broad-form submission is not always feasible. *Romero*, 166 S.W.3d at 230.[7] Indeed, the failure to adequately divide out various forms of damage can itself result in reversible error. *Id.* at 226–27.[8]

The preference for broad-form submission must be balanced against the language of Section 33.003(a) of the Texas Civil Practice and Remedies Code:

> The trier of fact, *as to each cause of action asserted*, shall determine the percentage of responsibility ... for [each claimant, defendant, settling person, and responsible third party who has been joined under Section 33.004] with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 33.003(a) (emphasis added); *see F.F.P. Operating Ptnrs., L.P. v. Duenez*, 237 S.W.3d 680 (Tex.2007).

The standard for our review is whether the trial court abused its discretion in deciding how to submit the charge, in light of the presumption in favor of broad-form submission of questions. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990).

The record shows that the trial court attempted to separate the causes of action and their resultant damages and allocate them against the different parties to assure that each section could be separately addressed on appeal. The court's decision is defensible. Damage awards from different causes of action should be separated rather than lumped into a single whole—especially where different, but related, causes of action against different, but related, defendants are involved. Failing to do so, in fact, has been held to be reversible error. *See, e.g., Bed, Bath & Beyond v. Urista*, 211 S.W.3d 753, 756 (Tex.2006); *Casteel*, 22 S.W.3d at 388–89; *Roberts v. Whitfill*, 191 S.W.3d 348, 357 (Tex.App.-Waco 2006, no pet.); *First United Bank v. Panhandle Packing & Gasket, Inc.*, 190 S.W.3d 10, 17 (Tex.App.-Amarillo 2005, no pet.); *Tex. Indus. v. Vaughan*, 919 S.W.2d 798, 804 (Tex.App.-Houston [14th Dist.]

---

mining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *De Leon v. Furr's Supermarkets, Inc.*, 31 S.W.3d 297, 299 (Tex.App.-El Paso 2000, no pet.).

7. When a damages issue is submitted in broad form, an appellate court cannot ascertain with certainty what amount of the damages award is attributable to each element. *See Kansas City S. Ry. Co. v. Carter*, 778 S.W.2d 911, 916 (Tex.App.-Texarkana 1989, writ denied).

8. A trial court errs by overruling a party's timely and specific objection to the charge, which mixed valid and invalid elements of damages in a single broad-form submission, and such error is harmful because it prevents the appellate court from determining "whether the jury based its verdict on an improperly submitted invalid" element of damage. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000); *see also* TEX.R.APP. P. 61.1(b); *Harris County v. Smith*, 96 S.W.3d 230, 234 (Tex.2002).

1996, writ denied). Although related, the actions Bishop brought against Schleier were not the same ones brought against Isaacs. Isaacs does not argue now, and did not argue then, that either Isaacs or Schleier would be liable for the damages caused by the other in those alternative causes of action. The trial court carefully separated the damages to avoid overlap, and each defendant was found liable for damages for the particular causes of action asserted against that party.

We find unfounded Isaacs' argument that Section 33.003 of the Texas Civil Practice and Remedies Code absolutely requires a lump submission. The statutory mandate is described as not being discretionary; failing to correctly apply the law is an abuse of discretion. *In re Kuntz,* 124 S.W.3d 179, 181 (Tex.2003). The statute does not, as Isaacs argues, require damages for all causes of action to be combined in a single unified recovery. The statute explicitly requires proportionate responsibility to be determined as to each cause of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.003.

While a single submission would be simpler, if it can be done fairly and accurately, here such a submission would not be fair or accurate. Merging damages from different causes of action and then requiring percentages be derived for damages not attributable to all defendants would actively create error. The trial court did not abuse its discretion by deciding not to give a single, unified proportional responsibility charge covering all causes of action.

### (2) Denying Rescission to Bishop Was Within the Trial Court's Equitable Discretion

█ Bishop argues that fraud—which Bishop did not discover until late in the discovery process—justified rescinding the contract and thus undoing the purchase.

Bishop argues that the trial court abused its discretion by denying Bishop's right to rescind the purchase.

█ Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment. *Martin v. Cadle Co.,* 133 S.W.3d 897, 903 (Tex. App.-Dallas 2004, pet. denied); *Country Cupboard, Inc. v. Texstar Corp.,* 570 S.W.2d 70, 73–74 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.); *see Humphrey v. Camelot Retirement Cmty.,* 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ). Rescission of a contract is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *Scott v. Sebree,* 986 S.W.2d 364, 368 (Tex.App.-Austin 1999, pet. denied). Whether to grant rescission lies within the trial court's discretion. *See Gentry v. Squires,* 188 S.W.3d 396, 410 (Tex.App.-Dallas 2006, no pet.); *Barker v. Roelke,* 105 S.W.3d 75, 84 (Tex.App.-Eastland 2003, pet. denied); *Tex. Capital Secs., Inc. v. Sandefer,* 58 S.W.3d 760, 774 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Humphrey,* 893 S.W.2d at 59; *Schenck v. Ebby Halliday Real Estate, Inc.,* 803 S.W.2d 361, 366 (Tex.App.-Fort Worth 1990, no writ).

█ Bishop sought to rescind the contract based on the jury finding that Isaacs engaged in fraud in connection with the purchase. A contract is subject to avoidance on that ground. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex.1990). In such a situation, an allegedly defrauded plaintiff has a choice to make, whether to claim the equitable remedy of rescission for fraud and try to get his or her property back or to affirm the transaction and seek damages. *Calstar Props., L.L.C. v. City of Fort Worth,* 139 S.W.3d 433, 440 (Tex.

App.-Fort Worth 2004, no pet.); *Scott,* 986 S.W.2d at 368.

■ To be entitled to rescission, a party must show that (1) he or she and the defrauding party are in the status quo (i.e., there are no retained benefits received under the instrument and not restored to the other party) or (2) there are equitable considerations that obviate the need for the status quo relationship. *Gentry,* 188 S.W.3d at 410; *Shenandoah Assoc. v. J & K Prop., Inc.,* 741 S.W.2d 470, 475 (Tex. App.-Dallas 1987, writ denied) (citing *Boyter v. MCR Constr. Co.,* 673 S.W.2d 938, 941 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)). An inability to return the parties to their former position should be considered in determining whether rescission would be equitable. *See Ennis v. Interstate Distribs., Inc.,* 598 S.W.2d 903, 906 (Tex.App.-Dallas 1980, no writ).

■ The question is whether the trial court abused its discretion by denying Bishop's choice to seek rescission. The factors before the trial court, in the exercise of its traditional equitable powers, include: probability of irreparable damage to the moving party in the absence of relief, possibility of harm to the nonmoving party if the requested relief is granted, and public interest. *Wenner v. Tex. Lottery Comm'n,* 123 F.3d 321, 325 (5th Cir. 1997); *Davis v. Estridge,* 85 S.W.3d 308, 310 (Tex.App.-Tyler 2001, pet. denied).

■ The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles; and the mere fact that a trial court may decide a matter within its dis-

cretionary authority differently than an appellate court does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985).

■ Under such a review, we cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, i.e., without reference to guiding rules or principles. *Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). Moreover, we cannot substitute our judgment for the trial court's reasonable judgment even if we would have reached a contrary conclusion. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992); *Buller,* 806 S.W.2d at 226. The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002); *Davis,* 571 S.W.2d at 862.

Some evidence and a jury finding established that Bishop was at least partly responsible for the fraud perpetrated on him. Evidence suggested that, before Bishop signed the promissory note prepared by Schleier—who Bishop knew had a history as Isaacs' lawyer—Bishop did have, but failed to make use of, an opportunity to read the note. The jury found that Isaacs committed fraud and was seventy percent responsible for the damages, but that Bishop was thirty percent responsible. Some authority suggests that a negligent party may not obtain rescission; substantial authority exists that unclean hands will preclude such relief. *See Schenck,* 803 S.W.2d 361.

We conclude from the record that the trial court's ruling was within the scope of its equitable authority. We overrule this contention of error.[9]

---

**9.** Various arguments were made by the Isaacses which, because of our principal rul-

ing on this issue, are not dispositive. The Isaacses contend that, because the note was

### (3) Ordering Bishop's Damages Offset Against Isaacs' Note Was Error

▮ Isaacs complains about the offset, not only because there was no total percentage of harm determination (an argument which we addressed and rejected previously), but also because HDI is a separate entity and Bishop's damage awards should not be offset against the amounts HDI owes to Isaacs.[10]

Bishop contends his actual damage award should not be offset against the principal balance of the note because there was no acceleration of the note. Thus, he argues, the court had no basis for requiring the due-and-payable damage award to be offset against the unmatured note. Bishop points out that, although the trial court did not accelerate the note, it used the damage award as an offset to prepay part of the principal balance of the note, which otherwise had a remaining fifteen-year payment term. Bishop argues that prepayments of this nature are, as a matter of law, prepayments of the monthly payment, not just payments of principal. See Bradford v. Thompson, 470 S.W.2d 633, 635–36 (Tex.1971) (payment in amount above monthly installment had effect of paying other installments early). He alternatively argues that no offset should be applied at all, because the court explicitly declined to accelerate the note and because the tort claim and the contract claim are not appropriate for setoff against each other. Bishop's position appears to be that if any offset is allowed at all, the offset should be against monthly payments rather than the principal of the note. Isaacs has not responded to this argument.

▮ The facts of the case determine the proper measure of damages as well as any allowable offset. Vance v. My Apartment Steak House of San Antonio, Inc., 677 S.W.2d 480, 481 n. 1 (Tex.1984); Ap-

---

rewritten during the bankruptcy, any fraud that occurred in the original writing was superseded and that HDI and Bishop had elected at that time the remedy of rewriting or reforming the note, rather than rescinding it. But, the bankruptcy plan itself specifically provided that all claims asserted in this pending lawsuit were preserved and retained for enforcement, and one of those claims was a request for rescission. The document was reformed or modified by order of the bankruptcy court, while still expressly preserving other pending claims, including rescission. Thus, the Isaacses' argument fails on its face.

The Isaacses also argue that, by accepting the benefits of the replacement note as imposed by the bankruptcy court, Bishop ratified that note and eliminated any possible later attack on the original note. Ratification occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it. See Zieben v. Platt, 786 S.W.2d 797, 802 (Tex. App.-Houston [14th Dist.] 1990, no writ). Ratification may either be express or implied from a course of conduct. Once a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract.

See Spellman v. Am. Universal Inv. Co., 687 S.W.2d 27, 29 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e). Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract. See Barker, 105 S.W.3d at 85; Old Republic Ins. Co. v. Fuller, 919 S.W.2d 726, 728 (Tex.App.-Texarkana 1996, writ denied).

The ratification defense raised by the Isaacses is inapplicable. The argument seems to be that, by performing under the terms of the replacement note, Bishop ratified the original note and thus has waived any right to complain about the original note. Certainly, Bishop did perform under the Replacement Note. But, again, the bankruptcy court order explicitly preserved the rights under the prior note. Thus, neither performing under the Replacement Note or seeking bankruptcy relief would ratify wrongs done in connection with the original note.

10. HDI is a corporate entity wholly owned by Bishop. It was created, and the track properties transferred into it in an unsuccessful attempt to avoid bankruptcy. HDI and Bishop are both liable to Isaacs on the purchase note for the property.

*praisal Review Bd. of El Paso County Cent. Appraisal Dist. v. Fisher,* 88 S.W.3d 807, 816 (Tex.App.-El Paso 2002, pet. denied). When opposing parties each establish recoveries against the other, the trial court is to render judgment for the balance of the larger recovery, implicitly providing for offset. *See* Tex.R. Civ. P. 302.

We have been directed to no cases that are directly on point. But the *Bradford* case is instructive and supportive of part of Bishop's argument. Unless a payment, made in an amount above the scheduled amount, is specifically directed to be applied to principal only, the prepayment applies to future installments to be paid on or before scheduled due dates. *Bradford,* 470 S.W.2d at 635–36. Although the trial court refused Isaacs' request for acceleration of the maturity of the note—obviously concluding there was no basis for an acceleration—the court's ordered setoff had the effect of partially accelerating the note.

Although Rule 97(g) of the Texas Rules of Civil Procedure allows a tort recovery to be setoff against a contractual demand, if the two arise out of, or are incident to or connected to, the same event, that presupposes that the party wins a current recovery on the contractual claim. *See* Tex.R. Civ. P. 97(g). The court did not award acceleration to Isaacs, nor did Isaacs prevail on any other theory in its contractual claims against Bishop or HDI.

 Setoff of mutual obligations as a matter of right is available only when both obligations are due, unless it is established that the obligor of the unmatured obligation is insolvent. *Bandy v. First State Bank,* 835 S.W.2d 609, 619 (Tex.1992); *Stockyards Nat'l Bank v. Presnall,* 109 Tex. 32, 194 S.W. 384, 385 (1917).[11] We

conclude that offsetting the due damage award held by Bishop against the unmatured note held by Isaacs was error. We will reform the judgment to eliminate its offset provision.

*(4) Bishop's Recovery for Intentional Infliction of Emotional Distress Was Proper*

 Isaacs also argues that the trial court erred by overruling his motion for judgment N.O.V., thus allowing Bishop's recovery for intentional infliction of emotional distress to stand. Isaacs complains mainly that his efforts to foreclose and the brawl at the track could not support such a recovery because the tort of intentional infliction of emotional distress is only a gapfiller[12] and that the alleged physical attack could have supported a cause of action for the tort of assault.

Isaacs' summary of the evidence is incomplete. The fist fight was not the only matter laid at his feet. There was testimony that Isaacs threatened to bankrupt Bishop unless Bishop told police what Isaacs wanted. As set out above, Isaacs took a number of affirmative steps aside from the foreclosure proceedings that were designed to make Bishop's life as miserable as possible. The jury could take the evidence as showing that Isaacs was intentionally attempting to ruin Bishop's life and finances and that Isaacs took various actions to cause that to occur. Though some of those actions were legal, some were not. As summarized by counsel, Bishop was threatened, intimidated, drawn into a number of legal proceedings, made the subject of misleading publicity, and finally forced into corporate and personal bankruptcy. As a result of Isaacs' actions,

---

**11.** *Bandy* and *Presnall* both deal with a bank's right of offset, but the principle is the same here.

**12.** *See Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814 (Tex.2005).

Bishop expended all of his savings and borrowed money from his parents, actions which were insufficient to save a separate construction business. It appears that the jury could easily have concluded that Isaacs took a number of steps to damage Bishop and then used the legal system to assist in implementing his plan of destruction.

Evidence allowed the jury to conclude that Isaacs ordered Bishop to lie to cover up Isaacs' criminal act or face being forced into bankruptcy. It is not an otherwise cognizable claim, and the result was obviously not speculative. It is, in the language of *Creditwatch*, conduct "utterly intolerable in a civilized community," and "bordering on serious criminal acts." *Creditwatch*, 157 S.W.3d at 818. We conclude that the cause of action was available in this situation.

In order to prevail in his judgment N.O.V. argument, Isaacs must show conclusively that no recovery was proper, either because the law disallows it, or because there is no evidence to support the recovery or there is conclusive evidence to refute recovery. Because he has failed to make any such showing, we overrule this contention of error.

### (5) Bishop's Recoveries Based on Fraud Were Proper

■ Isaacs next contends, in multifarious arguments, that the court erred in various ways on the fraud question because (a) there was no evidence that Isaacs damaged Bishop by falsely representing anything to him, (b) as a matter of law, Isaacs owed no "duty of disclosure" to Bishop, (c) the jury also found Bishop to have a percentage of negligence, destroying any legal duty to disclose, and (d) the "duty to disclose" instruction is fatally incorrect. We disagree.[13]

13. In connection with the fraud cause of action, the Isaacses make other arguments, which fail as well. They argue that the "duty to disclose" instruction in jury question 10 is "fatally incorrect." But they did not object on that basis at trial. In the absence of an objection at trial that matches the complaint on appeal, nothing has been preserved for our review. Tex.R.App. P. 33.1. Complaints and argument on appeal must correspond with the complaint made at the trial court level. *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 124 (Tex. App.-Texarkana 1994, writ denied).

The Isaacses also seem to contend that jury question 11 incorrectly stated the law about their responsibility for any actions that were taken by their attorney, Schleier. But there was no objection to the charge as given. The complaint has not been preserved for our review. Tex.R.App. P. 33.1.

When no objection is made to a jury instruction, we review the sufficiency of the evidence in light of the charge submitted. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 n. 4 (Tex.2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex.2000). In the absence of an objection, the current complaint does not comport with the objection at trial, and we may not review it on appeal. We must, therefore, measure the verdict by the charge given, even if the charge contains incorrect statements of the law. We overrule this contention.

The Isaacses also argue that the trial court erred by overruling their motion for judgment N.O.V. for attorneys' fees for fraud in the sale of the business because the award is outside the scope of the fraud statute pled as grounds for attorneys' fees. Without complaint by the Isaacses, the trial court constructed the jury charge to cover both common-law and statutory real estate fraud. The charge does not limit itself to either formulation.

The Isaacses' argument is based on the position that the jury did not make a finding required by Section 27.01 of the Texas Business and Commerce Code to support a fraud recovery in a transaction involving real estate. *See* Tex. Bus. & Com.Code Ann. § 27.01 (Vernon 2002). Thus, they assert, the attorneys' fees provided under that statute are not available. Isaacs' argument is largely based on language within the statute which they read as requiring the plaintiff to show that the defrauder benefited from the fraud in order to fit within the statutory fraud umbrella. This misreads

The record reveals evidence of fraud. There was evidence that Isaacs and Bishop met with Schleier to discuss documenting the purchase of the track, that they jointly planned to use the same terms and documents as had been used when the Isaacses had purchased the track four years earlier, intending to draft the promissory note to include notice and cure rights and to exclude a demand feature. Isaacs agreed to all of this, but there is evidence that, two days before the documents were to be mailed, Isaacs contacted Schleier and directed him to change the terms to include the demand feature in the note. Isaacs admitted that he so instructed the attorney. Because this is some evidence that Isaacs perpetrated a fraud on Bishop, the evidence is sufficient to defeat a judgment N.O.V. review.

Isaacs further contends, based on a line of real estate fraud cases under the Texas Deceptive Trade Practices Act, that he had no legal duty to disclose information that the buyer could reasonably be expected to discover by his own inquiry. Those cases do not apply. They involve the purchaser's ability to discover impairments to the property itself, such as foundation defects, shifting walls, and the like.[14] Those cases address the usability of the property for its intended purpose and whether physical problems on that property are detectable. This is an entirely different situation.

Isaacs also argues under this same contention that, as set out in *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001), a failure to disclose information is not an actual fraud unless there was a legal duty to disclose the information. While that is a correct summary of *Bradford's* holding, this is not a pure failure-to-disclose case. The evidence describes more than fraud by mere silence. The evidence supports a finding of an intentional, active course of action intended to result in a decidedly different result than that originally contemplated by the parties. There is evidence that Isaacs made a representation to Bishop about the note's content, but then, unilaterally and without notice to Bishop, directed that the document be changed to remove that portion and to add another section that completely changed the note's original content. Isaacs' cited authority is not controlling.

The fraud finding is not one that, as a matter of law, could not be made.[15] The remedy is available on these facts. Thus,

---

the statute. The "benefit" language appears only in a section authorizing exemplary damages. The charge otherwise corresponds to the requirements of the statute, and the argument fails on its face.

Isaacs also suggests that the attorneys' fees are unavailable because the statute does not apply to the sale of a business that only incidentally involves real estate. The two cases they cite are not on point. One predates the statute by forty years and does not address the sale of real estate, and the second case involves a purchase of limited partnership interests, not real estate. *Marshall v. Quinn–L Equities, Inc.,* 704 F.Supp. 1384 (N.D.Tex. 1988); *Ulrich v. Krueger,* 272 S.W. 824 (Tex. Civ.App.-Galveston 1924, no writ). The property transferred in this case was the land, with the buildings and track built thereon.

This fits the explicit language of the statute, and we have been directed to no authority showing that the language means otherwise.

**14.** The general rule is that a seller of real estate is under a duty to disclose those material facts which would not be discoverable by the buyer in the exercise of ordinary care and due diligence. *Smith v. Nat'l Resort Cmtys., Inc.,* 585 S.W.2d 655, 658 (Tex.1979); *Robbins v. Capozzi,* 100 S.W.3d 18, 24 (Tex.App.-Tyler 2002, no pet.); *Pairett v. Gutierrez,* 969 S.W.2d 512, 515 (Tex.App.-Austin 1998, pet. denied).

**15.** Isaacs does not contend the evidence is legally insufficient; his sole argument is that the law will not allow recovery in this type of situation.

the motion for judgment N.O.V. was properly overruled by the trial court as to the fraud claim. We overrule this contention of error.

### (6) Bishop's Recovery of Attorneys' Fees and Costs Must Be Modified

The submission of attorneys' fees and costs to the jury was in a novel form, but was not challenged by the parties. Predicated on the finding that Isaacs defrauded Bishop, the jury was to answer question 15, which had multiple parts, each of which was answered as set out below:

> What is a reasonable fee for the necessary services of [Bishop's] attorney for prosecuting the claim for fraud against ... Isaacs, stated in dollars and cents, and what is a reasonable fee for ... Bishop's expert witnesses and costs of depositions, stated in dollars and cents? Answer with an amount as to attorney's fees for each of the following:
>
> (a) For preparation and trial.
> Answer: $200,000
>
> (b) For an appeal to the court of appeals.
> Answer: $50,000
>
> (c) For an appeal to the Supreme Court of Texas.
> Answer: $35,000
>
> Answer with an amount for costs:
> Answer: $285,000

In the judgment, the trial court awarded Bishop a lump sum of $250,000.00 for attorneys' fees and costs, without conditioning any portion of them on appeal and without itemization or allocation. The trial court stated on the record, during a hearing held between trial and the entry of judgment, that it would give judgment for $200,000.00 as attorneys' fees and $50,000.00 as costs.

Bishop is unhappy with that result because the trial court failed to award all attorneys' fees and litigation costs as found by the jury. In their motion for judgment N.O.V., the Isaacses asked the trial court to remit all but $50,000.00 of that award, based on the position that the evidence was insufficient to support any amount more than that, and, alternatively, that it should award no costs because the evidence did not support the $285,000.00 amount of costs awarded by the jury. Isaacs argues on appeal that the award includes $50,000.00 in costs.

If we assume, as do all of the parties, that the trial court reduced the expert witness and deposition costs to the $50,000.00 that all parties effectively admitted was shown by the evidence—rather than the $285,000.00 in *costs* found by the jury—we are faced with a different problem, because that leaves a remainder of $200,000.00 in *attorneys' fees* awarded in the judgment—an award that did not cover all of the attorneys' fees found by the jury.

Isaacs did not complain about the amount of the attorneys' fees, but argued that *none* were recoverable for the reasons discussed above. Bishop asked for the *full fees and costs* found by the jury and complains about their absence in the judgment. Bishop argues that, beyond the $285,000.00 total *attorneys' fees* found by the jury, there was evidence to support the full $285,000.00 in *costs* found by the jury, referring us to a portion of the record that he suggests provides evidence to support that finding. There is no such evidence at that location, and we find none anywhere else in the record. Bishop's counsel did testify to having cut the normal rates by about one-third, from $300,000.00 to $200,000.00, because east Texas rates were lower than those in Denton. But this does not constitute evidence to support an award of $285,000.00 in *costs*. Isaacs does not argue that there is insufficient evi-

dence to support an award of $50,000.00 in costs, instead acknowledging that the amount of the trial court's award was appropriate if costs were to be recovered at all.[16] Bishop's argument as to costs is without merit and is overruled.

The trial court erred by failing to award the full amount of attorneys' fees found by the jury. We reform that portion of the judgment to award the attorneys' fees found by the jury conditioned on the final appellate level reached by the case.

The remaining arguments are disposed of by our resolution of the contentions above.[17]

We reform the judgment in the following respects: (1) to award to Bishop the attorneys' fees found by the jury, conditioned as the jury so found, that is, $200,000.00 through trial, $50,000.00 for appeal to this Court, and $35,000.00 for any appeal to the Texas Supreme Court; (2) to award Bishop $50,000.00 in expert witness and deposition costs as found by the jury; (3) to eliminate the offset between Bishop's recovery and the balance owing on the Isaacses' note and to leave outstanding both the note balance and the damage award. As reformed, the judgment is affirmed.

## OPINION ON REHEARING

### JOSH R. MORRISS, III, Chief Justice.

After we issued our original opinion [18] in this case, we received motions for rehear-ing from both sides. Most of the issues raised in the dueling motions for rehearing are not meritorious and need not be addressed. One issue does merit comment, in that it was not explicitly addressed in our original opinion.

Charles Bishop complains that we did not directly address his conditional complaint that the trial court erred by reducing his fraud-based damage award by the percentage of his negligence. The reduction was based on the application of Chapter 33 of the Texas Civil Practice and Remedies Code on proportionate responsibility. Bishop was found thirty percent responsible for his own damages due to his negligence, so the fraud damages were reduced by that percentage. He raises several arguments attacking that damage reduction.

■■ Bishop first argues that Section 33.002 does not apply at all, based on long-standing caselaw consistently holding that negligence is not a defense to fraud. Traditionally, negligence has never been a defense to fraud. *See Davis v. Estridge*, 85 S.W.3d 308, 311 (Tex.App.-Tyler 2001, pet. denied); *McCrary v. Taylor*, 579 S.W.2d 347, 349 (Tex.Civ.App.-Eastland 1979, writ ref'd n.r.e.); *S. States Life Ins. Co. v. Newlon*, 398 S.W.2d 622, 626 (Tex.Civ. App.-Eastland 1966, writ ref'd n.r.e.); *see also Isenhower v. Bell*, 365 S.W.2d 354 (Tex.1963). While the cases do say that negligence is not a complete defense to fraud, they do not address the issue of

16. As mentioned above, the Isaacses' position is that, though the amount of $50,000.00 is a correct amount, no fees or costs should be awarded as a matter of law because the statute does not apply to this case.

17. The Isaacses also argue in a single sentence, without authority or analysis, that they should have been entitled to immediately accelerate the note against co-maker HDI. This argument is inadequately presented for re-view. Consequently, the Isaacses have forfeited appellate review of this argument. *See Pheng Invs., Inc. v. Rodriquez*, 196 S.W.3d 322, 332 (Tex.App.-Fort Worth 2006, no pet.). We overrule that contention of error.

18. *Isaacs v. Bishop*, No. 06–05–00092–CV, 2008 WL 680795, 2008 Tex.App. LEXIS 114, 249 S.W.3d 100 (Tex.App.-Texarkana Jan. 10, 2008, no pet. h.).

proportional responsibility, a statutory matter.

Further, although *McCrary* stated explicitly that Article 2212a of the Texas Revised Civil Statutes—the statute which was ultimately recodified as part of Section 33 of the Texas Civil Practice and Remedies Code—applied only to actions based on negligence and declined to apply the statute because the recovery in that lawsuit was based on fraud, the language in that early version of the statute referenced in *McCrary* explicitly stated that it did not apply to a claim based on an intentional tort. *McCrary*, 579 S.W.2d at 350. The current statute has no such restriction. *See generally Harris v. Archer*, 134 S.W.3d 411 (Tex.App.-Amarillo 2004, pet. denied) (intentional tort restriction no longer in proportional responsibility statute).

■ Bishop also argues that an exception that exists in the relevant version of Section 33.002 has the effect of taking this case entirely out of the application of the section, thus allowing his recovery for fraud without reduction for his own negligence. The version of Section 33.002(b)(11) applicable to this case stated that, notwithstanding subsection (a), a defendant with specific intent to harm others, acting in concert with another person in a manner described in specified Penal Code sections is "jointly and severally liable with such other person for the damages legally recoverable by the claimant that were proximately caused by such conduct." Subsection (11) refers to the crime of securing execution of document by deception.[19] *See* TEX. PENAL CODE ANN. § 32.46 (Vernon Supp.2007).

Bishop argues that, as the fraud findings (and others made by the jury) cover the elements of the crime mentioned above, the exception should apply and exclude the application of proportional responsibility in his situation.

In determining the amount of recovery, Section 33.012 of the Texas Civil Practice and Remedies Code provides that the trial court shall reduce the amount of damages to be recovered by a claimant by a percentage equal to the claimant's percentage of responsibility. TEX. CIV. PRAC. & REM. CODE ANN. § 33.012 (Vernon Supp.2007). In this instance, Bishop's percentage of responsibility was thirty percent. Section 33.002, which applies to defendants, settling persons, or responsible third parties, provides that a defendant may, in limited situations (specific intent plus acting in concert with another to engage in prohibited conduct), may be jointly and severally liable for the damages legally recoverable. In this instance, the damages legally recoverable are those found by the jury, reduced by thirty percent in accordance with Section 33.012. According to the plain language of Section 33.002 applied to the facts of this case, those reduced damages would still be recoverable by Bishop, but might be damages for which Isaacs would be jointly and severally liable with another. Assuming, without deciding, that the findings of the jury mandate a determination that Isaacs is jointly and severally liable, he would still be liable for the "damages legally recoverable" as determined by the trial court.

We need not determine whether the civil findings made in the trial court are equivalent to formal findings that the stated

19. The prior version of the statute applies in this case, as suit was filed before July 1, 2003. Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.10(1), 2003 Tex. Gen. Laws 847, 859.

crime occurred, because, even if Section 33.002(b)(11) applies, it does not eliminate the application of proportional responsibility; it merely provides that co-conspirators will be jointly and severally liable "for the damages legally recoverable." Because that does not create an exception to proportional responsibility, we conclude that the argument is without merit. This contention on rehearing is overruled.

We overrule the motions for rehearing.