NO. 07-06-0220-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 21, 2008

_____

DENNIS HOLT, INDIVIDUALLY AND D/B/A DENNIS HOLT

REAL ESTATE AND ANN HOLT, APPELLANTS

V.

DARYL ROBERTSON AND SELENA ROBERTSON, APPELLEES

_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY, TEXAS

NO. 35,814; HONORABLE RICHARD DAMBOLD, JUDGE[1]

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

This dispute involves the rescission of an executed real estate sales contract pertaining to the purchase and sale of a residence in Hutchinson County, Texas. The

_____

[1]Sitting by assignment.

sellers and Appellants herein, Dennis Holt, Individually and d/b/a Dennis Holt Real Estate, and Ann Holt, seek to have this Court reverse the judgment which ordered the rescission of that contract and awarded the purchasers and Appellees herein, Daryl Robertson and Selena Robertson, recovery of the consideration paid pursuant thereto. Appellants contend the (1) evidence is legally and factually insufficient to support the jury's findings of fraud and fraud in the inducement, (2) trial court abused its discretion in granting Appellees the remedy of rescission, and (3) trial court erred in allowing recovery based upon an inappropriate theory of damages for misrepresentation. We affirm.

### Background

In January of 2002, Appellants entered into a contract to sell their residence of thirty-one years to Appellees for $255,000. Pursuant to this contract, Appellants delivered to Appellees a "Seller's Disclosure Notice" as required by § 5.008 of the Texas Property Code. The disclosure notice revealed, among other things, the presence of driveway cracks, broom closet tile floor cracks, and previous water penetration into the residence. As was their right under the contract, Appellees retained a licensed real estate inspector to inspect the property. The inspection of the residence was completed prior to closing and Appellees were given a report from the inspector.

The sale closed on February 27, 2002; however, by agreement of the parties, Appellants retained possession of the residence until April 15, 2002. Shortly thereafter, Appellees moved into the residence. After moving into the residence, Appellees began

2

experiencing various problems. For the first few days that Appellees were in the residence, they noticed a strong odor. Over the next few months, they experienced problems with the sewer system and the heating and air conditioning system. During this period of time, they also learned that water had previously penetrated the sub-floor heating and air conditioning ducts as well as a floor safe located within the residence. Appellees further learned that Appellants had filed an insurance claim for sewage backup. Appellees experienced sewage backups and based upon a post-closing plumbing inspection they learned that sewage was seeping into the soil under the residence due to a leak in the drain pipe. Appellees also discovered the presence of mold and observed the accumulation of foil-laden dust.[2] Concerned about their health, Appellees vacated the residence after approximately ten months. In September of 2003, they brought the underlying action against Appellants seeking rescission and recovery of damages.

At trial, a jury found Appellants had committed a fraud against Appellees and had fraudulently induced them into entering into the contract of sale. The jury also found that Appellees' own negligence caused the "incident in question," and that Appellees caused 40% of any damages that they might have suffered. The jury further found damages totaling $29,855.49. The trial court then ordered a rescission of the contract of sale and ordered Appellants to return the consideration paid, plus interest from the date of filing

---

[2]A mold inspector, employed by Appellees, evaluated the interior of the house and concluded that there was no risk to humans and mold remediation was not necessary. However, it was discovered that the foil-laden dust was originating from deteriorating air-supply ducts.

*Plaintiff's Original Petition*.  The trial court did not award any recovery based upon the jury's findings of negligence and damages.

## I.  Is the Evidence Legally and Factually Sufficient to Support the Jury Findings?

In response to Question 1, the jury found that Appellants fraudulently induced the Appellees into signing the contract in question; and, in Question 8, the jury found that Appellants had committed a fraud against Appellees.  Based upon these findings, the trial court entered judgment rescinding the contract and ordering that the parties be restored to their pre-contract status.  In their first issue, Appellants contend the judgment must be reversed because the evidence supporting the jury's findings is legally and factually insufficient.  We disagree.

### A.  Multiple Basis for Relief Granted

Appellees fraud and fraudulent inducement claims were based upon two general categories of alleged misrepresentation: (1) affirmative representations that were false, and (2) existence of material facts that were not disclosed.  The elements of a cause of action based upon a false affirmative representation are: (1) that a representation was made; (2) the representation was material; (3) the representation was false; (4) when the representation was made, the speaker either knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (5) the speaker made the representation with the intent that the other party should act upon it; (6) the party acted in

reliance on the representation; and (7) the party suffered injury as a result thereof. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001); *Ernst & Young v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex. 2001). The elements of fraud by nondisclosure are: (1) concealment or failure to disclose a fact; (2) the fact was material; (3) the nondisclosing party had a duty to disclose the fact to the complaining party; (4) the nondisclosing party knew the complaining party was ignorant of the fact and the complaining party did not have an equal opportunity to discover the fact; (5) by failing to disclose the fact, the nondisclosing party intended to induce the complaining party to take some action or refrain from acting; (6) the complaining party relied upon the nondisclosing party's nondisclosure; and (7) the complaining party was injured as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento,* 48 S.W.3d 749, 754-55 (Tex. 2001).

Because the jury's response to Questions 1 and 8 could be based up either an affirmative representation or nondisclosure, the jury's findings will not be overturned on appeal if it is sustainable under either basis. Furthermore, because the judgment granting rescission could be based upon either the jury's findings of fraud or fraudulent inducement, unless otherwise inappropriate, the judgment will not be reversed if it is supportable under either theory.

### B. Standard of Review

When both legal and factual sufficiency challenges are raised on appeal, the reviewing court must first examine the legal sufficiency of the evidence. *See Glover v. Tex.*

5

*Gen. Indemnity Co.*, 619 S.W.2d 400, 401 (Tex. 1981). In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the verdict and indulge ever reasonable inference that supports the verdict. *City of Keller v. Wilson,* 168 S.W.3d 802, 821-22 (Tex. 2005). That is to say, this Court must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *Id.* at 819. The reviewing court may not substitute its judgment for that of the jury, so long as the evidence falls within the zone of reasonable disagreement. *Id.* at 822. But if the evidence allows only one inference, neither the jurors nor the reviewing court may disregard it. *Id.* The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

In reviewing a legal sufficiency issue, we may sustain the challenge only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810; *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied,* 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

6

In reviewing factual sufficiency, the reviewing court must consider, examine, and weigh the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the finding; instead, the court considers and weighs all the evidence, and sets aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407.

### C. Analysis

### 1. Legal Sufficiency

Appellants contend the jury's fraud and fraudulent inducement findings cannot withstand a legal sufficiency analysis because there is a complete absence of evidence of a vital fact, to-wit: Appellants' misrepresentation of a material fact or knowledge of a material fact not disclosed to Appellees in the pre-closing contract process. Appellants further contend that, prior to closing, Appellees were aware of some of the complained of defects, thereby conclusively establishing the opposite of a vital fact in question, to-wit: reliance upon the alleged misrepresentation or nondisclosure. Thus, Appellants challenge the legal sufficiency of the evidence supporting the "false representation and/or nondisclosure" and "reliance" elements of the jury's fraud findings. *See FirstMerit Bank,* 52 S.W.3d at 758.

### a.    False Representations

Appellees contend Appellants represented that there were new sewer lines installed. In response, Appellants contend they merely represented that the sewer lines were replaced from the street to the house, where new clean-out plugs had been installed in both the original sewer line and a subsequently installed sewer line which was established when they added-on a new bathroom in the 1980s.  A post-closing inspection confirmed that there was a sewer line from the bathroom addition to the main sewer line, but that there were not two distinct sewer lines connected to the city main.  The inspection further established that neither sewer line was new.  Because this evidence would enable reasonable and fair-minded jurors to find that Appellants made an affirmative representation of a material fact that subsequently proved to be false, the evidence of a false representation was legally sufficient.

### b.    Nondisclosure of Material Facts

Appellees also contend Appellants failed to disclose problems with the sewer. Specifically, they offered evidence that the sewer line was damaged and leaking, thereby allowing raw sewage to seep into the soil beneath the house.  Appellees offered evidence that the leaking sewer line caused the residence to have a foul odor and that Appellants may have been aware of those odors because they took affirmative steps during the sales negotiation process to mask the odor by burning candles.  Furthermore, Appellees offered

8

evidence that Appellants had experienced previous plumbing problems and had even filed an insurance claim for damages caused by sewage backup.

Appellees further contended that Appellants had failed to disclose problems with the heating and air conditioning duct work. Appellees offered evidence that the duct work had been damaged by water penetration. The duct work was a sub-floor system that contained evidence of deterioration due to the presence of water. There were both rust and water stains within the system and the foil lined duct work was shedding foil particles that were circulated into the residence whenever the system was running. Appellants contend that their disclosure statement revealed previous water penetration. However, evidence was presented that the water penetration referenced in the Seller's Disclosure Statement was in reference to water that entered the residence from the back door.

Appellants denied knowledge of these undisclosed defects. In an effort to establish that they were unaware of these defects, they relied heavily upon the pre-closing inspection conducted on behalf of Appellees. While the inspection report does support an inference, albeit marginal, that Appellants were unaware of any latent defects prior to closing, it does not conclusively establish that fact. Appellants' knowledge, or lack thereof, of an undisclosed defect was a fact question to be resolved by the trier of fact. Where the jury's determination is not against the great weight and preponderance of the evidence, any argument that Appellants were unaware of an undisclosed defect must be resolved in

9

favor of the fact finder. The evidence was legally sufficient to establish that Appellants failed to disclose a material fact that they were under a duty to disclose.

### c. Reliance

Appellants also contend that the jury's fraud and fraudulent inducement findings cannot withstand a legal sufficiency analysis because the evidence conclusively establishes the opposite of the vital fact in question, to-wit: Appellees' reliance upon the misrepresentation or failure to disclose.

In this regard, Appellants contend Appellees were either aware of the complained of misrepresentation, or that they had an opportunity to discover the undisclosed defect when they exercised their contractual right to have the premises inspected prior to closing. The Seller's Disclosure Notice did not put Appellees on notice of the absence of new sewer lines, the leaking sewer line, or the prior water penetration into the heating and air conditioning duct work. Appellees contend, and we agree, that their pre-closing inspection report's failure to disclose defects does not give rise to an inference that they had any pre-closing knowledge of those defects. Likewise, the repairs recommended by the inspection report, specifically the recommendation that the heating and air conditioning system was not functioning or needed repair, do not give rise to an inference that Appellees were aware of the condition of the sewer lines or heating and air conditioning duct work. Finally, the disclaimers contained in the inspection report concerning the non-performance of tests beyond the scope of the inspection (e.g. hydro-static testing of sewer lines, and mold and

air-quality testing) does not raise an inference of anything relevant to the determination of the "reliance" element of the jury's fraud findings.

Reasonable and fair-minded jurors could have found that Appellees relied upon Appellants' misrepresentations and that they acted without knowledge of undisclosed material facts. Appellants' legal sufficiency contention is overruled.

### 2. Factual Sufficiency

Appellees argue that Appellants' factual sufficiency point is not preserved for appeal because it was not raised in a motion for new trial. *See* Tex. R. Civ. P. 324(b)(2); *Cecil v. Smith,* 804 S.W.2d 509, 510 (Tex. 1991) (motion for new trial is a prerequisite to factual sufficiency complaint on appeal in a jury case). We agree. Appellants factual sufficiency contention is overruled. Having overruled both the legal and factual sufficiency contentions, issue one is overruled.

## II. Did the Trial Court Abuse its Discretion in Ordering Rescission?

### A. Rescission

Judicial rescission is an equitable remedy that seeks to set aside an otherwise legal contract due to fraud, mistake, or for some other reason when it is necessary to avoid unjust enrichment of the non-complaining party to the contract, so that the parties thereto may be restored, insofar as is possible, to the status or position they were in prior to

execution of the contract. *Isaacs v. Bishop,* No. 06-05-0092-CV, 2008 WL 680795, *5 (Tex.App.–Texarkana March 14, 2008, no pet. h.). As between the parties, a contract subject to rescission is not void, but is voidable. After performance of the contract, the transaction remains voidable, and rescission remains a viable option, so long as the status quo of the parties prior to entry of the contract can be restored. Until the transaction has been rescinded, the parties remain in the position they were in after performance of the contract but prior to the rescission, i.e., in the context of an executed real estate sales contract, the grantee has the right to possession of the property and the grantor has no interest in the property. *Terry v. Baskin,* 27 S.W.2d 857 (Tex.Civ.App.–Austin 1930), *rev'd on other grounds*, 44 S.W.2d 929 (Tex. 1932).

Rescission is a harsh remedy generally not favored by the courts, and it will not be granted where other relief is available unless the relative equities, when weighed by the court, clearly favor the party seeking rescission. *Little v. Kennedy,* 195 S.W.2d 255, 260 (Tex.App.–Amarillo 1946, writ ref'd n.r.e.). When contemplating the remedy of rescission, the trial court must weigh several factors to determine whether a party's request for rescission should be granted, including, but certainly not limited to: (1) probability of irreparable damage to the requesting party in the absence of relief; (2) possibility of harm to the non-complaining party if the requested relief is granted; (3) the status quo of the parties, i.e., whether they are presently in or can be placed in the status or position they were in prior to execution of the contract; (4) whether any retained benefits can be restored to the other party; (5) whether rescission will in fact restore the parties to their former

12

position; (6) whether the party seeking rescission has "clean hands"; (7) whether the complaining party has another adequate remedy at law; and (8) the public interest. *Isaacs,* 2008 WL 680795, *5; *Davis v. Estridge*, 85 S.W.3d 308, 310 (Tex.App.–Tyler 2001, pet. denied).

To be entitled to rescission, a party must plead and prove the absence of an adequate remedy at law. *See Davis*, 85 S.W.3d at 310; *Ryan v. Collins,* 496 S.W.2d 205, 209 (Tex.Civ.App.–Tyler 1973, writ ref'd n.r.e.); *Chenault v. County of Shelby*, 320 S.W.2d 431, 433 (Tex.Civ.App.–Austin 1959, writ ref'd n.r.e.). Furthermore, the party requesting rescission must show that either there are no retained benefits received under the contract which are not being restored to the other party, or that there are equitable considerations that obviate the need for restoration of the status quo. *Isaacs,* 2008 WL 680795, at *5. An inability to return the parties to their pre-contract positions is only one factor that should be considered in determining whether rescission would be equitable. *Id.* Likewise, the "clean hands" of the party seeking rescission is only a factor for the trial court to consider. *See Schenck v. Halliday Real Estate, Inc.*, 803 S.W.2d 361, 367 (Tex.App.–Fort Worth 1990, no writ).

Therefore, in order to be entitled to rescission of a transaction involving real property, the party seeking rescission must, as condition precedent, first return, or offer to

return either the property[3] or the purchase price received for it,[4] together with the value of any benefit derived from its possession.[5]  A party will not be permitted to repudiate the transaction and, at the same time, retain the benefits received.  Where rescission of a transaction results in a return of the property, equity requires that the parties be made whole for such matters as placing valuable improvements on the property,[6] expenditures for insurance, taxes, and repairs.[7]

## B.  Standard of Review

The decision to allow rescission lies strictly within the sound discretion of the trial court.  *Issacs,* 2008 WL 680795, at *5.  The decision of the trial court to grant the equitable remedy of rescission should not be disturbed in the absence of a showing that the court abused its discretion.  *Davis,* 85 S.W.3d at 310.  Therefore, the determinative question is whether the trial court abused its discretion when it granted Appellees' request for rescission.  The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for rescission; rather, it is a question

---

[3]*Johnson v. Cherry,* 726 S.W.2d 4, 8 (Tex. 1987); *Davis v. Estridge*, 85 S.W.3d 308, 311 (Tex.App.–Tyler 2001, pet. denied).

[4]*Bozeman v. Folliott,* 556 S.W.2d 608, 614 (Tex.Civ.App.–Corpus Christi 1977, writ ref'd n.r.e.).

[5]*Davis*, 85 S.W.3d at 311.

[6]*Wilson v. Martinez,* 74 S.W.2d 308, 311 (Tex.Civ.App.–El Paso 1934, no writ).

[7]*Dean v. Dean,* 214 S.W. 505, 509 (Tex.Civ.App.–1919, no writ).

14

of whether the trial court's decision was arbitrary or unreasonable because the court acted without reference to any guiding rules and principles. *See Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). The mere fact that this Court may have decided the question differently does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985).

### C. Analysis

Appellants contend that Appellees are not entitled to the remedy of rescission because Appellees did not come into court with clean hands. In support of this argument, Appellants contend Appellees' negligence, as found by the jury, was a proximate cause of their damages and, therefore, evidence of their unclean hands. In response, Appellees contend that Appellants' fraud precludes them from invoking the clean hands doctrine. As previously stated, the clean hands of the party seeking rescission is but one factor that the trial court must consider in determining the relative equitable position of the parties. Furthermore, the jury's finding of negligence pertains to an apportionment of post-closing monetary damages and does not pertain to the fraud that forms the basis for Appellees' rescission claim. Under the facts of this case, we cannot say that the lack of clean hands by Appellees was such that the trial court abused its discretion by granting rescission.

Appellants further contend that Appellees failed to give notice of rescission or restore or offer to restore the status quo because Appellees demanded (1) return of the consideration paid, plus (2) the cost of repairs made. A party requesting rescission may

15

recover the reasonable cost of repairs made to the property being returned. Therefore, the demand made by Appellees was nothing more that what they were entitled to under the law. Under these facts, we cannot say the trial court abused its discretion in finding that Appellees did give notice of their intent to seek rescission and did not breach the equitable maxim of restoration of the status quo.

Next, Appellants contend Appellees failed to offer to compensate them for the "ownership benefits" such as the fair rental value of the property during their possession. In order to do equity, the trial court was required to consider the time value of benefits derived by each party during the period of time from execution of the contract to rescission. Any inequity arising from the lapse of time should be considered and adjusted by the court as a part of the rescission order. *Davis*, 85 S.W.3d at 311.

The judgment entered by the trial court did award Appellees the time value of the consideration they paid at closing (*viz.* $261,228.60) by awarding pre-judgment interest from the date of filing suit until the date of judgment. Therefore, from the date of closing until the date of filing suit, Appellees received the ownership benefit of the property and Appellants received the ownership benefit of the consideration paid. Furthermore, the trial court did not give Appellees credit for the repairs they made to the property prior to their claim for rescission. Under these circumstances, we cannot say that the trial court did not consider the benefits derived by each party, nor can we say that the court abused its discretion by offsetting these amounts. Accordingly, we cannot say that the trial court

16

failed to do equity or that it was an abuse of discretion to order the rescission of the real estate contract in question. Consequently, issue two is overruled.

## III. Is the Jury Finding of Damages Supported by a Proper Damage Theory?

A suit for rescission depends upon disaffirmance of the underlying contract and it invokes the equitable jurisdiction of the court; whereas an action to recover damages for a breach of contract is based upon affirmance of the underlying contract and does not address the equitable jurisdiction of the court. *Branham v. Short,* 526 S.W.2d 639, 641 (Tex.Civ.App.–Fort Worth 1975, no writ). Rescission of a contract involving the sale of real property is an equitable remedy used as a *substitute* for monetary damages when such damages would be inadequate. *Isaacs,* 2008 WL 680795, at *5. Because the trial court did not award and Appellees do not seek recovery of damages based upon the jury findings, we pretermit consideration of Appellants' third issue pertaining to an alleged improper measure of damages. While we are mindful of this contention, our disposition of Appellants' first two issues eliminates the necessity that we consider issue three.[8]

### Conclusion

Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

---

[8]Tex. R. App. P. 47.1.

17