Affirmed and Memorandum Opinion filed December 30, 2008








Affirmed and Memorandum Opinion filed December 30, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00352-CV

____________

 

UNDERWRITERS AT LLOYDS SUBSCRIBING
TO POLICY NOS. MDJ03/L075 AND MDJ03/Z0165 AND MARKEL INTERNATIONAL INSURANCE
COMPANY LIMITED SUBSCRIBING TO POLICY NO. MDJ03/A0165, Appellants

 

V.

 

EDMOND, DEATON & STEPHENS
INSURANCE AGENCY, INC., Appellee

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 05-34919

 



 

M E M O R A N D U M   O P I N I O N








In this case, underwriters paid an insured under insurance
policies based on damages arising from a fire.  The underwriters sued the
insurance agency that submitted the insured=s application,
asserting claims for breach of fiduciary duty, negligence, negligent
misrepresentation, and indemnity.  Based on a jury=s verdict, the
trial court rendered judgment that the underwriters take nothing against the
agency.  On appeal, the underwriters assert that the trial court erred in
rejecting various arguments asserted in their post-trial motions.  We affirm
the trial court=s judgment.

I.  Factual and Procedural Background

Appellants are various Lloyd=s of London
underwriters subscribing to certain insurance policies  (hereinafter AUnderwriters@).  Appellee
Edmond, Deaton & Stephens Insurance Agency, Inc. (hereinafter AInsurance Agency@) entered into an
agreement, referred to by the parties as a AProducer=s Agreement,@ with M.D.
Jensvold & Co., Inc. (AJensvold@), a managing
general agent for the Underwriters.[1] 
The Producer=s Agreement was valid and enforceable at all times
relevant to the disputed issues.  Under the Producer=s Agreement, the
Insurance Agency had the authority to solicit applications for insurance,
present Jensvold quotations, and collect premiums and service policies of
insurance placed through Jensvold.  Under the Producer=s Agreement, the
Insurance Agency is given no authority to bind or modify insurance contracts on
behalf of Jensvold or the companies that Jensvold represents.

Mike Stephens was an insurance agent for the Insurance
Agency.  In April 2003, Stephens prepared, signed, and submitted a request to
the Underwriters for an insurance quote on behalf of Pioneer General
Contractors and Pioneer Millworks (hereinafter collectively APioneer@) for insurance 
coverage.  The application stated in pertinent part as follows:

!       One of Pioneer=s buildings has an address of 3850 Mack Road and is
inside the Amarillo city limits, and another building has an address of 3850-B
Mack Road but is outside the Amarillo city limits.

!       The protection class of the buildings is A4.@

!       The buildings are within the Amarillo Fire
District.








Only
Stephens signed this application.  The Underwriters reviewed the application
and assigned a hazard rating of A5@ or Ahigh hazard@ to Pioneer.  The
Underwriters, based on the information in the application, quoted premiums for
the requested insurance.  The Insurance Agency accepted the offers in the
quotes, and the Underwriters issued binders indicating the effective dates of
coverage.  The Underwriters also requested an inspection of the premises. 
According to the Underwriters, they rely on the information submitted in the
application by an insurance agent and do not require such information to be
confirmed in a separate inspection report.  Approximately two weeks later, the
Insurance Agency submitted  applications, dated May 23, 2003.  These
applications were on the same form as the earlier applications; however, they were
signed by a representative of Pioneer and were not signed by Stephens.  These
applications stated that both of Pioneer=s buildings were
within the Amarillo city limits.  In fact, both buildings were located outside the
Amarillo city limits and were not located within the Amarillo Fire District.

A fire damaged Pioneer=s property, and the Underwriters
paid Pioneer $1,488,955.26 for the damage under the policies.  The Underwriters
sued the Insurance Agency, asserting claims for breach of fiduciary duty,
negligence, negligent misrepresentation, and indemnity.  The Underwriters
alleged that the Insurance Agency prepared and submitted Pioneer=s applications for coverage and
that these applications contained misrepresentations.

The case proceeded to trial, and the jury found as follows:

!       The Insurance Agency had actual or apparent
authority from the Underwriters to solicit insurance applications.  

!       The Insurance Agency made a negligent,
material misrepresentation upon which the Underwriters justifiably relied.

!       The Insurance Agency did not make the
negligent misrepresentation with an intent to deceive the Underwriters.

!       In addition to the Insurance Agency=s negligence, the negligence of the
Underwriters also proximately caused the injury in question.

!       A relationship of trust and confidence did
not exist between the Insurance Agency and the Underwriters.  








!       The Underwriters= percentage of fault that caused
the injury was 65%.

!       The sum of money that would fairly and
reasonably compensate the Underwriters for their damages is $700,000.[2]

The
Underwriters moved for entry of judgment in their favor, to disregard certain
jury findings, and for judgment notwithstanding the verdict.  The trial court
denied this motion, and, based on the jury=s verdict, the
trial court rendered judgment that the Underwriters take nothing. The
Underwriters also filed a motion for new trial, which was overruled by
operation of law.

                                            II.  Issues Presented

On appeal, the Underwriters assert
the following issues for review:

(1)     The trial court erred in denying the
Underwriters= motion for judgment based on the
jury=s findings of agency and a
material, negligent misrepresentation.

(2)     The evidence is legally and factually
insufficient to support the jury=s finding that the Underwriters were 65% comparatively
responsible.

(3)     The Underwriters are entitled to a new trial
because the Insurance Agency owed the Underwriters a fiduciary duty as a matter
of law and because the jury=s finding of no duty is not supported by legally or factually sufficient
evidence.

(4)     The
evidence is legally and factually insufficient to support the jury=s damages finding.

                                        III.  Standards of Review








When
reviewing the legal sufficiency of the evidence, we consider the evidence in
the light most favorable to the challenged finding and indulge every reasonable
inference that would support it. City of Keller v. Wilson, 168 S.W.3d
802, 823 (Tex. 2005).  We must credit favorable evidence if a reasonable
factfinder could and disregard contrary evidence unless a reasonable factfinder
could not.  See id. at 827.  We must determine whether the evidence at
trial would enable reasonable and fair-minded people to find the facts at
issue.  See id.  The factfinder is the only judge of witness credibility
and the weight to give to testimony.  See id. at 819.  When reviewing a
challenge to the factual sufficiency of the evidence, we examine the entire
record, considering both the evidence in favor of, and contrary to, the
challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  GTE Mobilnet of S.
Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own judgment for that of the trier of fact,
even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616. 

We review a trial court=s determination
that an expert witness is qualified under an abuse-of-discretion standard.  See
Broders v. Heise, 924 S.W.2d 148, 151-52 (Tex. 1996).  The trial court
abuses its discretion if it acts arbitrarily, unreasonably, or without reference
to guiding rules or principles.  See id.; Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex.1985).  An
abuse of discretion does not occur merely because the appellate court may have
decided a discretionary matter in a different way than the trial court.  Downer,
701 S.W.2d at 242.

                                                   IV.  Analysis

A.      Did the trial court err by
applying the comparative responsibility statute?








In their first issue, the Underwriters assert that the
comparative responsibility statute  does not apply to a claim by an underwriter
against an insurance agent who has made a material, negligent misrepresentation
on an insurance application, upon which the underwriter relies in binding
coverage.  Once the foregoing elements are established, the Underwriters assert
that the agent is estopped under Texas law from denying responsibility to the
insurer.  

If Chapter 33 of the Texas Civil Practice and Remedies Code
applies to a claim, the  claimant may not recover if its percentage of
responsibility is greater than fifty percent.  See Tex. Civ. Prac. & Rem. Code Ann. ' 33.001 (Vernon
2008).  Chapter 33 does not apply to certain, specific claims.  See id.,
' 33.002(b) (Vernon
2008).  However, the record reflects that the Underwriters have not asserted
any of these claims, and the Underwriters do not argue otherwise.  Chapter 33
applies to Aany cause of action based on tort in which a
defendant, settling person, or responsible third party is found responsible for
a percentage of the harm for which relief is sought. . . .@  Id., ' 33.002(a)(1). 
The Underwriters sought monetary damages based on three common-law tort claimsCnegligent
misrepresentation, negligence, and breach of fiduciary duty.  The jury answered
questions regarding these tort claims.  The jury found that a defendant, the
Insurance Agency, was responsible for a percentage of the harm for which relief
was sought.  Unless the claims fall within an express statutory exemption from
the scope of Chapter 33, Chapter 33 applies generally to all common-law tort
claims and to statutory tort claims that do not include a separate and
conflicting legislative fault-allocation scheme.  See JCW Elec., Inc. v.
Garza, 257 S.W.3d 701, 704B7 (Tex. 2008); Southwest Bank v. Info.
Support Concepts, Inc., 149 S.W.3d 104, 111 (Tex. 2004); Werner v. KPMG,
L.L.P., 415 F.Supp.2d 688, 703 (S.D. Tex. 2006).  Under the unambiguous
language of section 33.002, Chapter 33 applies to the Underwriters= common-law tort
claims, and they may not recover on these claims if their percentage of responsibility
is greater than fifty percent.  See id., ' 33.001, 33.002;  JCW
Elec., Inc., 257 S.W.3d at 704B7; Southwest
Bank, 149 S.W.3d at 111; Galle, Inc. v. Pool, 262 S.W.3d 564, 571
(Tex. App.CAustin 2008, pet. filed) (applying Chapter 33 to
negligent-misrepresentation claim); Isaacs v. Bishop, 249 S.W.3d 100,
116B17 (Tex. App.CTexarkana 2008,
pet. denied); (applying Chapter 33 to common-law fraud claim).  








The cases cited by the Underwriters do not support the
proposition that the comparative responsibility statute does not apply to a
claim by an underwriter against an insurance agent who has made a material,
negligent misrepresentation on an insurance application, upon which the
underwriter relies in binding coverage.[3] 
Therefore, the Underwriters= argument for this proposition lacks
merit, and we overrule their first issue.

B.      Is the evidence legally and
factually sufficient to support the jury=s finding regarding the
Underwriters= comparative responsibility?








In their second issue, the Underwriters assert that the
evidence is legally and factually insufficient to support the jury=s finding that the
Underwriters= comparative responsibility is 65%.  In their argument
under this issue, the Underwriters begin by stating, without explanation or
record citation, that this jury finding was Abased exclusively
on the testimony of [Insurance Agency=s] purported >expert,= Russ Taylor.@  Proceeding on
this premise, the Underwriters then present arguments that Taylor=s testimony
amounts to no evidence.  Construing the Underwriters= points under
their second issue reasonably and liberally,[4]
the Underwriters assert the following arguments: (1) Taylor=s testimony was
speculative on the face of the record and therefore no evidence; (2) Taylor
repeatedly admitted he was testifying as to what he would have done and not
whether the Underwriters violated any standard of care; (3) Taylor was not
qualified to testify as an expert on the issues in this case; and (4) Taylor=s opinions are not
relevant and not reliable because his methodology is based purely on
speculation and without regard to, or understanding of, industry standards and
Lloyd=s underwriting
practices.  

(1.)    Was
Taylor=s testimony speculative on the face of the
record? 

No objection in the trial court is required to argue on
appeal that an expert=s testimony is speculative on the face of
the record and therefore legally insufficient.  See Arkoma Basin Exploration
Co. v. FMF Assoc. 1990-A, 249 S.W.3d 380, 388 (Tex. 2008).  Taylor
testified on direct examination as follows:

!       Based on his experience and background the
role of an underwriter in the issuance of an insurance policy is, among other
things, to accept applications from agents and insureds and then make a
judgment as to whether that risk is something that he wants to place.

!       It is not unusual to find mistakes on
insurance applications, but it is part of an underwriter=s job to find these mistakes and
clear them up.  

!       It is important to clear up these mistakes so
as to have accurate facts for the underwriter to make a judgment.

!       Based on his experience as an underwriter,
when an underwriter finds discrepancies on an insurance application, it is the
role of the underwriter to resolve the discrepancies.

!       An underwriter finds answers regarding
questions about such discrepancies by contacting the insurance agent and asking
questions.

!       It is not acceptable for an underwriter who
sees a discrepancy on an application to simply rely on another part of the
application to clear up the discrepancy, unless there is something very
specific on the application that explains the discrepancy.








!       It is extremely important for an underwriter
to be very thorough in evaluating an insurance application to see if the
information in it is consistent and fits within the insurer=s guidelines.

!       The April 2003 application submitted by
Pioneer contains a discrepancy because it states that one of Pioneer=s buildings is inside the city
limits but that the other building is outside the city limits. This discrepancy
is important in terms of the fire protection rating.  

!       Because it is unlikely that the city limits
would fall between the two buildings, it was important to investigate this
discrepancy.

!       Based on Taylor=s experience, the most important aspect of
determining the protection classification is whether the building is inside or
outside of the city limits.

!       Generally, the lower rated classifications
(indicating lower risk) are inside the city limits, and the higher rated
classifications (indicating higher risk) are outside the city limits.

!       It is possible that a building could be
outside the city limits and still have a protective class of four (as stated on
the application), but it does not happen very often.  This usually would occur
in a highly developed area which has its own independent fire protection
system, but it is not likely that there would be a low protection code for a
building outside the city limits.

!       To clear up the discrepancy in Pioneer=s application, a reasonable and
prudent underwriter should either (1) send the application back to the agent
saying the application is rejected until the underwriter gets answers or (2)
contact the agent to obtain clarification regarding the discrepancy.

!       Taylor has not seen any evidence that would
indicate that Mike Stephens of the Insurance Agency would not have responded
immediately and accurately.  

!       Both of
Pioneer=s buildings were
outside the Amarillo city limits. 

!       If the underwriter does his job right, sees
this discrepancy, calls the agent, and learns that the buildings are outside
the city limits, then the underwriter would ask why the application states that
the buildings are within the Amarillo Fire District and probably would ask the
agent if he was sure the protection code is four for buildings outside the city
limits.  If the agent stated that the buildings are actually in the Randall
County Fire District, then that would indicate that the buildings probably have
a different protection code.








The Underwriters assert that Taylor=s testimony is
purely speculative as to what would have been discussed had the Underwriters
contacted the Insurance Agency regarding the discrepancy to which Taylor
testified.[5] 
Though Taylor=s testimony could have been clearer,  we conclude that
it was not speculative on the face of the record.[6]


(2.)    Was Taylor testifying as to
what he would have done rather than whether the Underwriters violated any
standard of care?  








On direct examination, Taylor testified, among other
things,  regarding the role of an underwriter, the importance of clearing up
mistakes and resolving discrepancies in insurance applications, what a
reasonable and prudent underwriter should do to clear up discrepancies in
applications, and what a reasonable and prudent underwriter would do if the
inspection report reflects that the buildings were within 500 feet of a water
well rather than within 500 feet of a fire hydrant.  Under its second issue,
the Underwriters also assert that Taylor repeatedly admitted he was testifying
as to what he would have done and not whether the Underwriters violated any
standard of care.  The Underwriters rely on part of Taylor=s testimony during
cross-examination.  However, during this testimony Taylor did not state that
all his testimony was based on what he would have done rather than the standard
of care.  When asked a question in this regard, Taylor gave a nonresponsive
answer.  When asked a follow-up question, Taylor stated that he was talking
about what he would expect any underwriter or agent to do.  Taylor then stated
that he was relating his testimony to the standard of care of the industry as a
whole but that he could not speak to the legal requirements.  When asked if he
would say whether the insurance agent (Stephens of the Insurance Agency)
violated the standard of care, Taylor stated AI expressed that
the agent C or the underwriter violated or didn=t violate, but
that he also made errors but I don=t think the
standard of care is the issue.@  Taylor also testified that he could talk
about errors that the Underwriters and the Insurance Agency made and what he Athink[s] is right@ and Awhat=s wrong.@  We disagree with
the Underwriters= characterization of Taylor=s testimony on
cross-examination.  In any event, to the extent that a few of Taylor=s statements
indicate that he was not testifying as to what a person of ordinary prudence
would do or not do under the same or similar circumstances as existed with
respect to the Underwriters, the jury, as factfinder, was free to disregard
these statements.  See Pascouet, 61 S.W.3d at 615B16. 

(3.)    To what extent did the
Underwriters preserve error as to their other two arguments?








As to the Underwriters= other two
arguments, we first examine the extent to which they preserved error in the
trial court.  Prior to the jury=s verdict, the only objection to Taylor=s testimony that
the Underwriters made known to the trial court was an objection to Taylor being
qualified as an expert Ato the extent that [Taylor] has no
experience in underwriting under any of the C under Lloyd=s manuals and
Lloyd=s contracts.@[7]  Therefore,
except for this objection, which is addressed below, the Underwriters failed to
preserve error as to their remaining arguments under the second issue.  See
Tex. R. App. P. 33.1(a); Arkoma
Basin Exploration Co., 249 S.W.3d at 388 (stating that no trial court
objection is required to argue on appeal that an expert=s testimony is
conclusory or speculative on the face of the record but that an objection is
necessary before or during trial if the objection requires the court to
evaluate the underlying methodology, technique, or foundational data); Coastal
Transport Co., Inc. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 231B33 (Tex. 2004)
(holding that party need not preserve error in trial court to argue on appeal
that expert testimony was conclusory and therefore legally insufficient, while
stating that party needs to preserve error in trial court to assert on appeal
that expert testimony is unreliable and therefore legally insufficient); Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 408B11 (Tex. 1998)
(holding that party could not assert on appeal that expert testimony was
unreliable and therefore no evidence, because party failed to preserve error in
the trial court prior to jury=s verdict); Melendez v. Exxon Corp.,
998 S.W.2d 266, 282B83 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (holding that party could not argue on appeal that expert=s testimony was
legally insufficient evidence based on expert=s lack of
qualifications because party did not preserve error on lack of qualifications
in the trial court).  Therefore, these complaints have been waived.

(4.)    Did the trial court err in
overruling the Underwriters= objection at trial that Taylor was unqualified due
to his lack of experience in underwriting Lloyd=s contracts and under Lloyd=s manuals?








Regarding the complaint as to which the Underwriters
preserved error, we note that the jury was asked to determine whether the
Underwriters=  negligence proximately caused the injury in question
and to assess the Underwriters= percentage of comparative
responsibility.  ANegligence@ is defined in the
jury charge as Afailure to use ordinary care, that
is, failing to do that which a person of ordinary prudence would have done in
the same or similar circumstances or doing that which a person of ordinary
prudence would not have done under the same or similar circumstances.@  AOrdinary care@ is defined as Athat degree of
care that would be used by a person of ordinary prudence under the same or
similar circumstances.@  If technical or other specialized
knowledge will assist the jury in  understanding the evidence or determining a
fact in issue, a witness qualified as an expert by knowledge, skill,
experience, training or education, may testify thereto.  Tex. R. Evid. 702.  By their trial
objection, the Underwriters asserted that a person cannot be qualified to give
expert testimony regarding the Underwriters= alleged
negligence in this case unless the witness had experience in underwriting under
Lloyd=s manuals and
Lloyd=s contracts.  We
conclude that such experience is not mandatory for Taylor to be qualified as an
expert regarding the Underwriters= alleged
negligence in this case.  See Broders, 924 S.W.2d at 152-54 (holding
trial court did not abuse its discretion by determining that emergency-room
doctor was not qualified to testify as to whether doctors= alleged
negligence in failing to diagnose a patient=s head injury
caused her death but stating that, to be qualified, expert need not be in the
same specialization as the defendant doctor, rather the issue is whether the
witness has Aknowledge, skill, experience, training, or education@ regarding the
specific issue before the court which would qualify the expert to give an
opinion on that particular subject);  Ponder v. Texarkana Memorial Hosp.,
840 S.W.2d 476, 477B78 (Tex. App.CHouston [14th
Dist.] 1991, writ denied) (holding that non-physician with a doctorate in
neuroscience, who conducts research on the causes of neurological injuries and
teaches neurophysiology, neuroanatomy and neurochemistry to M.D.s and Ph.D.s,
may qualify as a medical expert on the cause of brain damage), superseded by
statute on other grounds by, Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351 (r)(5)(C)
(Vernon Supp. 2008).  On this basis alone, the trial court did not abuse its
discretion in overruling the Underwriters= objection at
trial to Taylor=s qualifications.

In addition, Taylor testified as follows:

!       Taylor started in the insurance industry
about 45 years ago as an underwriting trainee with Hartford Insurance Group.  

!       Taylor Aworked with Hartford after a nine-month training program in
an underwriting program handling property and casualty type accounts.@

!       After about two years, Taylor left Hartford
and went to work for another insurance company, at which he worked for four and
a half years underwriting foreign risks.








!       Taylor then returned to Hartford Insurance
Group and worked as a field underwriter for a couple of years, after which he
was promoted to Hartford=s education department, in which he
spent two years teaching Hartford agents about coverage and underwriting
issues.  Taylor trained people as to how to be an underwriter. 

!       Taylor
later worked at an insurance agency in Houston in an underwriting capacity.  

In
light of this testimony, even if the Underwriters had objected generally that
the Insurance Agency had failed to prove that Taylor was qualified to give
expert testimony regarding the Underwriters= alleged
negligence, the trial court would not have abused its discretion in overruling
this objection.  

The jury has wide latitude in allocating the percentages of
responsibility under Chapter 33.  See Axelrad v. Jackson, No.
14-02-00518-CV, CS.W.3dC,C, 2008 WL 2065897,
at *5 (Tex. App.CHouston [14th Dist.] May 15, 2008, no
pet.).  Even if the evidence would support a different allocation of the
percentages of comparative responsibility, this court may not substitute its
judgment for that of the jury.  See id.  We have addressed all of the
Underwriters= arguments under their second issue.  Under the
applicable standards of review, the evidence is legally and factually
sufficient to support the jury=s finding regarding the Underwriters= percentage of
responsibility.  Accordingly, we overrule the Underwiters= second issue.

C.      Did the trial court err by
failing to grant a new trial to determine whether the Insurance Agency breached
a fiduciary duty to the Underwriters, which the Underwriters assert the
Insurance Agency owed as a matter of law?








In question 7 of the charge, the jury was asked to
determine whether a relationship of trust and confidence existed between the
Insurance Agency and the Underwriters.  This question inquired into the
existence of an informal fiduciary relationship between the Insurance Agency
and the Underwriters.[8] 
See Lundy v. Mason, 260 S.W.3d 482, 501B2 (Tex. App.CHouston [14th
Dist.] 2008, pet. denied).  The trial court instructed the jury that such a
relationship of trust and confidence would mean that the Insurance Agency owed
the Underwriters a fiduciary duty.  The trial court instructed the jury not to
answer Question 8 (as to whether the Insurance Agency breached a fiduciary
duty) unless the jury found that a relationship of trust and confidence existed
between the Insurance Agency and the Underwriters.  The jury found that such a
relationship did not exist; therefore, the jury did not answer question 8 and
did not make any finding as to whether the Insurance Agency breached a
fiduciary duty.  








Under their third issue, the Underwriters complain that the
Insurance Agency owed the Underwriters a fiduciary duty as a matter of law and
therefore the trial court erred in failing to grant a new trial to determine
whether the Insurance Agency breached this fiduciary duty.[9] 
Presuming that the Underwriters requested a new trial on this ground in their
motion for new trial, the trial court did not abuse its discretion in denying
this request.  Because the Underwriters did not object at all to question 7 and
did not object to the conditioning of question 8 on a positive answer to
question 7, the Underwriters failed to preserve error as to a complaint that
the Insurance Agency owed a fiduciary duty as a matter of law and that the jury
should answer question 8 regardless of its answer to question 7.  See Tex. R. App. P. 33.1(a); Little Rock
Furniture Mfg. Co. v. Dunn, 222 S.W.2d 985, 989B90 (Tex. 1949)
(holding party that failed to object to instruction that jury not answer a
question based on its answer to prior question waived that party=s right to have
the jury make findings as to the subsequent question), modified on other
grounds by Bradford v. Arhelger, 340 S.W.2d 772 (Tex. 1960);  Texas
Employers= Ins. Ass=n v. Ray, 68 S.W.2d 290,
295 (Tex. Civ. App.CFort Worth 1933, writ ref=d) (holding
appellant could not complain of jury=s failure to
answer question because the charge instructed the jury not to do so based on
its answer to a prior question and because appellant did not object to this
instruction);  Hunter v. Carter, 475 S.W.2d 41, 46 (Tex. Civ. App.CHouston [14th
Dist.] 1972, writ ref=d n.r.e.) (concluding that, in case in
which jury followed instructions not to answer certain questions based on its
answer to a prior question,  party waived jury findings as to unanswered questions
by not objecting to the conditional submission of those questions).  Because
the Underwriters failed to preserve error, we overrule their third issue.

Having overruled the first three issues,
we need not address the Underwriters= fourth issue
regarding the sufficiency of the evidence to support the jury=s damages
finding.  Accordingly, we affirm the trial court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Brown, and Boyce.









[1]  The parties dispute the nature of the Insurance
Agency=s status under the Producer=s Agreement.  The Producer=s Agreement states in pertinent part, AProducer [Insurance Agency] is an independent
contractor and not an employee of MDJ [Jensvold].@  At trial, the jury found that the Insurance Agency had authority from
the Underwriters or Jensvold to solicit applications for insurance.  As to
Jensvold, the parties stipulated that any acts or omissions of Jensvold should
be considered acts or omissions of the Underwriters.





[2]  The jury also found against the Insurance Agency on
its defenses of waiver and estoppel.





[3]  See Banner Life Ins.  Co. v. Pacheco, 154
S.W.3d 822, 825B32 (Tex. App.CHouston
[14th Dist.] 2005, no pet.) (analyzing the sufficiency of the evidence
supporting jury=s findings regarding insurance company=s claims against its agent but not addressing applicability
of Chapter 33); American Indem. Co. v. Baumgart, 840 S.W.2d 634, 639B40 (Tex. App.CCorpus
Christi 1992, no writ) (reversing summary judgment and remanding breach-of-contract,
negligence, and fraud claims by insurance company against agent, but not
addressing applicability of Chapter 33); Hartford Cas. Ins. Co. v. Walker
County Agency, Inc., 808 S.W.2d 681, 688 (Tex. App.CCorpus Christi 1991, no writ) (reversing summary
judgment and remanding breach-of-contract, breach-of-fiduciary-duty,
negligence, and fraud claims by insurance company against agent, but not
addressing applicability of Chapter 33); Certain Underwriters at Lloyd=s of London v. A & D Interests, Inc., 197 F.Supp.2d 741, 747B48 (S.D. Tex. 2002) (denying motion to dismiss for
failure to state a claim as to underwriters=
negligence and negligent-misrepresentation claims against insurance agent, but
not addressing applicability of Chapter 33).  The Underwriters also cited Mayes
v. Stewart at oral argument for the proposition that a person committing
fraud cannot defeat the fraud claim by asserting that the defrauded party might
have discovered the truth by exercising proper care.  See 11 S.W.3d 440,
451 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  However,
this case deals with common-law principles regarding fraud liability, and it
does not address Chapter 33 of the Texas Civil Practice and Remedies Code.  See
id.; see also Isaacs, 249 S.W.3d at 116B17 (holding that unavailability of negligence as a
defense to common-law fraud did not preclude reduction in damages based on
plaintiff=s percentage of proportionate responsibility under
Chapter 33).





[4]  See San Saba Energy, L.P. v. Crawford, 171
S.W.3d 323, 338 (Tex. App.CHouston [14
Dist.] 2005, no pet.) (stating that courts interpret appellate briefing
requirements reasonably and liberally but that parties asserting error on
appeal still must put forth some specific argument and analysis citing the
record and authorities in support of their argument). 





[5]  On cross-examination, Taylor would not agree with
the Underwriters= counsel that his testimony in this regard was
speculation.  The Underwriters= counsel then
stated that Taylor had testified differently at his deposition and presented
Taylor with his deposition testimony that it is speculative as to whether the
Insurance Agency would have told the Underwriters that, though the first application
wrongly stated that one building was inside the city limits when both were
outside the city limits, everything else in the application was correct. 
Taylor then said that he perhaps misunderstood the deposition question.  When
asked again whether his testimony in this regard was Apure speculation,@
Taylor stated, AOh, yeah.  The competence of the underwriter, I can=t speak to. . .@ 
The jury, as factfinder, was free to disregard Taylor=s testimony on cross-examination.  See Pascouet,
61 S.W.3d at 615B16.  We do not interpret these statements as an
admission by Taylor at trial that his testimony was speculative, but even if he
had so testified, that would not require this court to hold that his testimony
was speculative on the face of the record.  





[6]  See Arkoma Basin Exploration Co., 249 S.W.3d
at 388B89. 





[7]  Before trial, the Underwriters filed a motion in
limine upon which the trial court ruled; however, that motion was not based on
Texas Rule of Evidence 702.  In any event, a trial court=s ruling on a motion in limine does not preserve
error.  See, e.g., Racciato v. Davies, 2006 WL 2254402, at *2 (Tex. App.CHouston [14th Dist.] Aug. 8, 2006, no pet.) (AA ruling on a motion in limine is not a ruling on
admissibility and does not preserve error for appellate review@) (mem. op.).  The Underwriters also filed a motion to
exclude certain testimony by Taylor under Rule 702.  However, the Underwriters
do not mention this motion in their appellate briefing.  The record does not
reflect that the motion to exclude was ever set for hearing or that the trial
court expressly ruled on it.  The Underwriters have not shown that the trial
court was aware of the complaints in this motion, which is required to preserve
error. See Nip v. Checkpoint Sys., Inc., 154 S.W.3d 767, 771, n.1. (Tex.
App.CHouston [14th Dist.] 2004, no pet.).





[8]  We need not and do not address whether the jury was
correctly instructed regarding this question.





[9]  The Underwriters also state, without supporting authority,
that, because the Insurance Agency allegedly owed the Underwriters a formal
fiduciary duty as a matter of law, the evidence is legally and factually
insufficient to support the jury=s
finding that no informal fiduciary duty existed.  However, even presuming that
a fiduciary duty arose as a matter of law based on an agency relationship
between the Insurance Agency and the Underwriters, this would not mean that the
trial evidence is legally or factually insufficient to support a finding that a
relationship of trust and confidence did not exist that would give rise to an
informal fiduciary duty.